STEARNS *v.* GRAND TRUNK RAILWAY CO.

1. CARRIERS—FREIGHT—WRONG DELIVERY —ACTION—EVIDENCE.

In an action against a carrier for the amount of a sight draft attached to a bill of lading of a car of lumber, which the carrier delivered without payment of the draft, the carrier may show that, owing to the inferiority of the lumber shipped on the contract between consignor and consignee, the contract price of the lumber, of which the car load was a part, had been fully paid, and nothing was due the consignor.

2. CUSTOM—EVIDENCE.

Where each of the parties to a contract testify to an express contract which excludes a custom, evidence of the existence of a custom which should control the parties is immaterial.

Error to Oakland; Smith, J. Submitted January 11, 1907. (Docket No. 26.) Decided April 30, 1907.

Assumpsit by Charles T. Stearns and Edgar F. Stearns, copartners as Stearns Brothers, against the Grand Trunk Railway Company for the amount of a sight draft attached to a bill of lading. There was judgment for plaintiffs, and defendant brings error. Reversed.

*Lodge, Trevor & Brown,* for appellant.

*Andrew L. Moore,* for appellees.

BLAIR, J. This is an action to recover of defendant the amount of a sight draft on J. P. Scranton & Co. attached to the bill of lading of a car load of lumber consigned to plaintiffs' order, and shipped by them over defendant railway, to be delivered to said Scranton & Co. upon payment of the draft. Defendant delivered the lumber to Scranton & Co. without payment of the draft, and defends this action upon the ground that Scranton & Co. were the true owners. The draft was for $116.68, which

was about half the value of the lumber in the car, and, according to plaintiff, represented the balance due on four cars of lumber.   Plaintiffs succeeded to the rights of Andrews & Stearns, with whom the contract for the lumber was made by Scranton & Co.   It is agreed that Mr. Scranton came to Pontiac, where the lumber was, from time to time, made an estimate of the amount of the lumber in the piles purchased, wrote his name on the piles, paid the amount of the estimate, and had the lumber insured in his name.

Plaintiff Stearns testified:

"At the time he made the various estimates, the estimate did not include the entire scaling of the lumber marked.   It was to be paid for when it was delivered on board at Pontiac.   The draft was attached to the last car, because I scaled the lumber myself.   Mr. Scranton refused to come out and do it.   I scaled it, and there was that much due us after deducting the payments he made, and I drawed the draft on that car for payment of that amount.   *   *   *

"Under the agreement between Andrews & Stearns and Mr. Scranton, all of this lumber was to be of a grade of common and better.   The mill culls should be kept out. The mill culls are the lowest grade, then seconds, then common and better.   This was to be common and better. Sixty per cent. better, I think, in that neighborhood.   I am willing to swear that all of this car was common and better, except a few pieces.   He told me I could put them in at half scale.   I didn't set any price on the seconds. I didn't scale them by themselves.   I just scaled them   half   scale   and   scaled   them   with   the   rest. The first and seconds would run to the common over 60 per cent., nearer 75 than 60.   It is not a fact that on that car of elm that I shipped them over six thousand feet were seconds and mill culls.   Those poles that went on the last car were good grade of poles.   *   *   *

"It was agreed between us that, when the lumber was loaded, the difference of the scale should be paid us. * * *

"When Mr. Scranton was out and looked this lumber over, it was being piled.   He didn't handle any of the lumber.   He could see the ends and top.   When he estimated this lumber, it was counted by the number of courses in making the estimate, and then he paid me the

amount of the estimate and wrote his name on the pile. After that he had an interest in it, but not until it was scaled and the balance paid was it to be his.   *   *   *

"When he estimated it, he said, 'This will be my lumber.' I said it would be his when he paid the balance. That balance had not been paid when this car on the 21st of November had been shipped. The only interest that I had in this car of lumber was for a claim of unpaid balance."

Mr. Scranton testified:

"I first saw Mr. Andrews in Detroit the latter part of 1904. Mr. Andrews spoke to me there with reference to having me purchase some lumber. Mr. Andrews stated that he would sell me this lumber, common and better, for $22 for the elm and $24 for the black ash, and there was some other lumber included. What I thought was about $35 common and better, and percentage of it was to run. He said this lumber would run 60 per cent. to common and better. He also stated that he didn't want to sell me any seconds because he had a market for seconds. *   *   *

"I paid the amount of these different estimates. I wrote the number of tiers and the amount of feet that they amount to, and, after doing that, I marked the piles and wrote my name on them. I wrote J. P. Scranton & Co. on every pile several times. I said in every instance I put my name on it, I said: 'This lumber is mine, and, if any trouble occurs to you people, this is my lumber. I am putting my money into it.' They assented to it. I afterwards insured this lumber in my name. Nothing was said by myself or Mr. Andrews or Mr. Stearns at any of these conversations as to where the lumber was to be scaled.   *   *   *

"I understood this lumber was to be scaled and inspected and the balance determined that was coming to Andrews & Stearns. I based that understanding on my general custom and rule. I don't think there was any agreement that the balance due Andrews & Stearns, if any, should be determined at Detroit by a scale and inspection, but it was understood that after it was determined whether there was a balance that the boys should get their pay if there was a balance, and that I should get what there was coming to me. The price that I made them was f.

148 Mich.—18.

o. b. the cars on Andrews & Stearns' siding. I was to pay the freight."

Defendant sought to show that the lumber was so inferior in grade, quality, and value to the lumber contracted for, that the payments made covered the value of the entire amount shipped, and there was therefore no balance due plaintiffs. The court excluded this testimony. The court also refused to permit defendant to show a general custom to inspect lumber at the place of reception by the consignee when the contract is silent as to the place of inspection. The assignments of error relate to one or the other of these rulings. The court excluded the testimony as to grade, etc., of the lumber for the reason—

"That the title of the alleged true owner can be shown only by testimony of a clear, direct, and positive character as to the title and ownership by testimony that does not involve a collateral issue before the title can be determined. It is believed to be against public policy to allow a carrier, contrary to the terms of the bill of lading, to deliver property to every or any consignee who claims the quality or quantity is not as agreed by the consignor, because it will create great uncertainty as to shipments and bills of lading, and because it will greatly increase litigation, should carriers frequently avail themselves of such a privilege."

We think it was error to exclude this testimony. The essence of defendant's offer of proof was a showing that Scranton & Co. had paid in full for all the lumber purchased, even if the contract required such payment before title passed, as claimed by plaintiffs. The mode of proving payment is no different in a case like this than in a case between the parties to the original contract. As said by the Supreme Court of the United States, the shipper "cannot confer rights which he does not himself possess, and, if he cannot withhold the possession from the true owner, one claiming under him cannot." *The Idaho*, 93 U. S. 575.

If there was no balance due the plaintiffs, they were not entitled to recover. If they had sued Scranton & Co.

for such balance or had replevied the property from them, the proof excluded would have been competent in their behalf, and it was equally competent in behalf of defendant. The court did not err in excluding the testimony offered to show a general custom. Each party testified to an express contract which excluded such custom, and the testimony was therefore immaterial and irrelevant.

The judgment is reversed, and a new trial granted.

MCALVAY, C. J., and GRANT, MONTGOMERY, and OSTRANDER, JJ., concurred.