**Charles Alberti, Assignee of Joseph Rollo, Appellant, v. Associated Fruit Company, Appellee.**

## Gen. No. 29,652.

1. SALES—*meaning of "acceptance in transit" in fruit trade.* The words "acceptance in transit" have an established meaning in the fruit trade that the buyer takes the risk of damage while the cars are in transit from the time of loading or date of the bill of lading.

2. SALES—*transition of title on sale of fruit "f. o. b. shipping point."* A sale of perishable fruit under an invoice providing "f. o. b. shipping point" means delivery to the buyer at that point and at his risk from the time of sale, and therefore the title to the fruit in question is deemed to have passed to the purchaser at that point at the time of the sale and at his risk from that point.

3. SALES—*burden of proof of breach of implied warranty of sound condition of perishable freight in action against seller.* In an action to recover for fruit, in cars, under an alleged implied warranty of soundness, where it was claimed that the purchaser was to accept all transit risks, and the invoice read "f. o. b. shipping point," under which title passed to the buyer at the shipping point, the implied warranty, if any, was either as to the condition at the time of original shipment from California or at the time of sale at Chicago, and the burden of showing the breach at either of such times and places was on plaintiff.

4. SALES—*proof of breach of warranty of sound condition of perishable freight in action against seller.* In an action against the seller of perishable fruit in transit for breach of implied warranty of sound and marketable condition of the fruit, proof of the bad condition of the fruit on its arrival at the buyer's place of business in Indiana, thirteen days after the date of shipment in California and nine days after the date of sale in Chicago, the place of sale, is insufficient to sustain the burden of proof of an implied warranty of condition either at the place of shipment or at Chicago, the only two places as to which there could have been any warranty under the terms of the sale.

5. SALES—*transition of title under Uniform Sales Act on sale of perishable freight "f. o. b. shipping point" as affected by specific agreement.* Section 20, ¶ 2 of the Uniform Sales Act, Cahill's St. ch. 121a, ¶ 23, considered, and held that property to the fruit in question passed to the buyer as of the date of shipment, by reason of the delivery and acceptance of the invoice containing the words "f. o. b. shipping point," regardless of any specific agreement of "acceptance in transit," subject to the seller's right of lien or enforcement of the contract until the property was fully paid for, and the buyer took the property with all risks of transit from the shipping point.

Appeal by plaintiff from the Municipal Court of Chicago; the Hon. JOHN J. ROONEY, Judge, presiding. Heard in the second division of this court for the first district at the October term, 1924. Affirmed. Opinion filed July 14, 1925.

ALLEGRETTI, SHEA & GANNON, for appellant; JOHN F. SHEA, of counsel.

WARREN PEASE, for appellee.

MR. PRESIDING JUSTICE BARNES delivered the opinion of the court.

By this action appellant seeks recovery of the price paid appellee for a carload of grapes and the amount of the freight bill. The action is based on the claim of an implied warranty that the grapes would be sound and marketable on their arrival, and breach of agreement to deliver without unreasonable delay. On a trial without a jury the issues were found for defendant.

The essential facts are in the main undisputed.

The grapes were sold while in transit from Santa Rosa, California, to Chicago, whence after sale they were diverted to Gary, Indiana, where the purchaser conducted his business. While the purchase was made in the name of one Rollo, and he has assigned the claim sued on to plaintiff Alberti, yet the latter was present and participated in the transactions, in which he had a financial interest, so that whether referring to one or the other we shall refer to him as the buyer or plaintiff.

Defendant was in the wholesale business in Chicago and sold many carloads of fruit while in transit to customers calling at its Chicago office. Of their shipments it received information by wire from its California office, from which it made out for its files a so-called sales card containing data as to the car, its contents, the variety, weight and price of the fruit, etc.

It was from this sales card it made out its invoice and sale, the bill of lading not usually arriving until many days after the arrival of the car.

When plaintiff, with whom defendant had had many transactions, called and inquired about grapes, he was told to look over the files of sales cards and select what he wanted. He selected the sales card referring to the car in question and the sale was then and there made at the price of $175 a ton, acceptance transit, $300 deposit, the balance payable on arrival of the car at Chicago (to which it had previously been reconsigned to defendant) and before diversion to Gary, the purchaser to accept all transit risks. The words "acceptance in transit," according to the testimony, have an established meaning in the fruit trade that the buyer takes the risk of damage while the cars are in transit from the time of loading or date of the bill of lading.

At the time of the sale, October 12, 1920, four days after the car was in transit, plaintiff was handed de-

fendant's invoice, stating the weight of the grapes, their price "f. o. b. shipping point," at "Santa Rosa, Calif., October 8, 1920," the amount of the sale and of the deposit and the terms as cash.

There seems to have been no misunderstanding as to these details except as to a specific agreement by plaintiff for all risks in transit or as to the fact that plaintiff was to pay the balance of the purchase price, as he did, on the arrival of the car at Chicago in the afternoon of October 19, when he received a delivery order for the car, which was diverted the next morning to Gary, where it arrived on the 21st. Plaintiff paid the freight bill to the railroad company on that day and opened the car. Finding the grapes badly rotted, he proceeded, without notice to defendant of their condition, to sell what he could from the car at reduced prices, getting therefrom about $400; the rest of the car lot he used as a fertilizer. Two days later when buying more grapes from defendant he informed it of the condition in which he found the grapes, and seemed to regard the railroad company as responsible, against which he brought suit for the damages. The bill of lading arrived later and was delivered to him.

While Alberti denied that the purchaser was to accept all transit risks, and the meaning of the words "acceptance in transit," as understood in the trade, is not disputed, the sale, as appears from the invoice, was f.o.b. shipping point, which ordinarily means delivery to the buyer at that point and at his risk from the time of sale. (*Sparta Produce Exchange v. Wilson & Co.*, 223 Ill. App. 126, and cases there cited.) These words presumably were used and understood in that sense, and the title to the goods must be deemed to have passed to plaintiff at that point at the time of the sale and at his risk from that point.

If there was any implied warranty, therefore, it was either as to the condition of the grapes at the time of

shipment from Santa Rosa or the time of sale. But whether one or the other, plaintiff, on whom the burden of showing the breach rested (Cyc., vol. 35, p. 457; *Maltman v. Williamson,* 69 Ill. 423; *Milk v. Moore,* 39 Ill. 584), did not undertake to prove the condition of the grapes except at the time of their arrival at Gary, thirteen days after they were shipped, and nine days after the sale, and no circumstances tending to show they were not in sound and marketable condition on either of those dates.

But appellant claims the title did not pass to him until the grapes were delivered in Gary, because by reconsignment the bill of lading belonged to defendant, notwithstanding the sale, and it could by virtue of it have taken possession of the car as against plaintiff any time before it was delivered to him; and he cites section 20, ¶ 2, of the Uniform Sales Act [Cahill's St. ch. 121a, ¶ 23], which provides that:

"Where goods are shipped and by the bill of lading the goods are deliverable to the seller of (or) his agent, or to the order of the seller or of his agent, the seller thereby reserves the property in the goods."

But that is not the entire paragraph. It continues:

"But if, except for the form of the bill of lading, the property would have passed to the buyer on shipment of the goods, the seller's property in the goods shall be deemed to be only for the purpose of securing performance by the buyer of his obligations under the contract."

That it was the intention of the parties that the property in the grapes should pass as of the date of shipment may be inferred from delivery and acceptance of the invoice, containing the understood words "f.o.b. shipping point," regardless of any specific agreement of "acceptance in transit." And the fact that plaintiff was given a delivery order, by which he could get the goods without the bill of lading, would indicate that plaintiff understood that the sale was absolute, defendant merely reserving the right of pos-

session and its lien until full payment, as it might do where, as here, there was no stipulation for credit (see section 54 of said Act) [Cahill's St. ch. 121a, ¶ 57] or for the purpose of securing performance of the buyer's obligations (see section 20, ¶ 2).

The Uniform Sales Act provides that:

"For the purpose of ascertaining the intention of the parties, regard shall be had to the terms of the contract, the conduct of the parties, usages of trade and the circumstances of the case." (Section 18, ¶ 2.) [Cahill's St. ch. 121a, ¶ 21.]

From all these as shown by the facts we cannot doubt that it was mutually understood and intended that the sale was absolute when the invoice was given as of the date of shipment, subject to defendant's right of lien or enforcement of the contract until the property was fully paid for, and that plaintiff took the property with all risks of transit from the shipping point.

There was no proof tending to show any unreasonable delay in the delivery of the goods.

The judgment is affirmed.

*Affirmed.*

GRIDLEY and FITCH, JJ., concur.