## Catherine Hughes, Appellee, v. Elmer M. Judd, Appellant.

### Gen. No. 33,475.

Opinion filed July 3, 1929.   Rehearing denied July 15, 1929.

ROTHBART & LEWIS and ROBERT F. KOLB, for appellant.

ESSINGTON & McKIBBIN and JAMES J. BARBOUR, for appellee; HAMILTON K. BEEBE and CREIGHTON S. MILLER, of counsel.

MR. PRESIDING JUSTICE BARNES delivered the opinion of the court.

This is an appeal from a finding and judgment awarding the right of property in plaintiff to a certain Swallow aeroplane which was attached in a suit by appellant against one Paul Snick.

Paul Snick was the Indiana distributor for the Swallow Aeroplane Company of Wichita, Kansas, where it had a factory. He had a contract with that company to purchase aeroplanes on certain terms and to resell them to whomsoever he liked in the State of Indiana. Both he and plaintiff lived in Plymouth, Indiana. She was his aunt. October 17, 1928, Snick made a deposit with said company of $500 on an aeroplane. He got no title papers to the same until November 5 following when he paid the balance of the purchase price. After making the deposit of October 18, he had a standing advertisement in a New York magazine called "Avia-

tion'' for the sale of a Swallow aeroplane. The last insertion was in the issue of November 3, 1928. November 2 he executed a bill of sale for said aeroplane to plaintiff, his aunt, in consideration of $2,200, for which she gave her check, and the same was cashed at a bank in Plymouth on the same day. When asked what she did to take possession of the machine, she answered: "I instructed Paul to go and get it." Snick testified that he left Plymouth November 4 and arrived in Wichita on the morning of the 5th to get the aeroplane; that on November 5 he received from the company a bill of sale for the aeroplane on which he was credited with the purchase price, including his previous deposit of $500. The following morning he got into the aeroplane and started towards Plymouth, landing in Chicago about dusk November 6. The weather conditions were too bad for flight on the following day and when he went to the field to resume flight on the 8th he was served with the attachment writ.

No proof was introduced by defendant other than the bill or memorandum of the sale from the Swallow Company to Snick on November 5, 1928, and a stipulation as to the identity of the aeroplane, the deposit thereon October 18, 1928, the custody of the aeroplane with said company in the interval to November 5, 1928, and that Snick did not have actual possession, custody or control of the aeroplane until November 5.

While defendant sought to cast suspicion upon the *bona fides* of the sale from Snick to plaintiff by reason of their relationship and the fact that she could not drive an aeroplane, and that he had advertised the same in an issue of said magazine November 3 (which, however, was a continuing advertisement and evidently arranged for before November 2 in order to reach New York for that insertion), yet these circumstances amounted to mere suspicion and not substantive evidence sufficient in our judgment to impeach the sale.

But it is contended that even though the sale to plaintiff did take place it was fraudulent and void as to creditors of Snick because possession of the aeroplane was left with Snick, and numerous cases are cited laying down the unquestioned doctrine in this State that "an absolute sale of personal property, where the possession is permitted to remain with the vendor, is fraudulent *per se,* and void as to creditors and purchasers," as was said in *Thornton v. Davenport,* 2 Ill. (1 Scam.) 296, 299. "The rule is founded in public policy, and is designed to prevent secret and collusive transfers of property, and the procurement of credit upon an apparent ownership, different from that which really exists." *Bass v. Pease,* 79 Ill. App. 314. But the doctrine is qualified somewhat by the general rule "that the delivery shall take place as soon as it reasonably may, regard being had, not to the convenience of the parties, but to the character of the goods, the situation of the property and the circumstances of the case." (2 Mechem on Sales [1901], sec. 963; 2 Moore on Fraudulent Conveyances [1908], p. 551.) That qualification of the rule has been recognized in this State with regard to the neglect of a mortgagee in a chattel mortgage to reduce the property to possession on default of the mortgagor, "or within a reasonable time thereafter" to be determined by the circumstances of the parties. (*Shannon v. Wolf,* 173 Ill. 253, 258; *Reed v. Eames,* 19 Ill. 594; *Jacobson v. Patterson,* 190 Ill. App. 266; *Burk v. Faber,* 188 Ill. App. 421.)

But we think the circumstances of the case bring it under the provisions of the Uniform Sales Act as to the passing of title to a contract of sale of "future goods." Section 5 of that Act, Cahill's St. ch. 121a, ¶ 8, reads:

"(1) The goods which form the subject of a contract to sell may be either existing goods, owned or possessed by the seller, or goods to be manufactured

*or acquired by the seller after the making of a contract to sell,* in this Act called 'future goods.'

"(3) Where the parties purport to effect a present sale of future goods, the agreement operates as a contract to sell the goods."

The rule for ascertaining the intention of the parties as to the time at which the property in the goods is to pass to the buyer as provided in section 19, rule 4 (1), Cahill's St. ch. 121a, ¶ 22, is that: "Where there is a contract to sell . . . future goods by description, and goods of that description and in a deliverable state are unconditionally appropriated to the contract" by either party thereto with the assent of the other, the property in the case thereupon passes to the buyer. Such assent may be expressed or implied, and may be given either before or after the appropriation is made.

It is clear that on November 2 when the bill of sale of the aeroplane in question by description was made by Snick to plaintiff the title thereto still remained in the Swallow Aeroplane Company, and that the title passed out of the company as soon as the machine was paid for by Snick and delivered to him. While, therefore, the parties to the bill of sale purported to effect a present sale it was of "future goods" as defined by said act and therefore the agreement operated as a contract to sell goods "acquired by the seller after the making of the contract to sell."

Discussing said provision of the act in 1 Williston on Sales (1924), sec. 137, it is said: "The attempted sale implies an obligation on the part of the seller to transfer title to the buyer thereafter. That is, though the parties purported to make a sale, if their intention cannot be effectuated fully, they are held at least to have made a contract." This was the construction put upon a present sale of beans which were to be grown in the future where the contract stated that it was understood by both parties the title was to pass at once and constitute an absolute sale. (*Hogue-Kellogg Co.*

*v. Baker,* 47 Cal. App. 247, 190 Pac. 493.) The goods, too, were "sold by description," were "in a deliverable state" and were "unconditionally appropriated" to the contract by the seller with at least the implied assent of the buyer, who gave him the money for the same and sent him to Wichita to get *her* aeroplane. When he took possession thereof it was unconditionally appropriated to the contract and in accordance with the clear intention of the parties the title thereto passed to plaintiff as the buyer. From that time on Snick was legally her agent to deliver the property.

While in coming to Chicago Snick did not take as direct a route as possible to Plymouth, Indiana, the explanation of his following an air route by "markings" along railroad lines to Chicago is a plausible one, and we find nothing in the circumstances of the route taken or the delay that ensued from weather conditions that has a legitimate tendency to impeach the *bona fides* of the transaction and the intention that the title of plaintiff to the aeroplane should pass when Snick obtained possession thereof.

The judgment is affirmed.

*Affirmed.*

SCANLAN and GRIDLEY, JJ., concur.