The Tupman Thurlow Company, Inc., Appellant, v. Louis T. Cook et al., Trading as National Casein Sales, Appellees.

Gen. No. 45,138.

Opinion filed November 29, 1950. Released for publication February 23, 1951.

THEODORE F. EHLER and JAMES B. McKEON, both of Chicago, for appellant.

RATHJE, KULP, SABEL & SULLIVAN, of Chicago, for appellees; JOSEPH J. SULLIVAN, JR., and THERON L. RATHJE, both of Chicago, of counsel.

MR. JUSTICE KILEY delivered the opinion of the court.

This is an action to recover a balance of $13,246.25, of the purchase price of casein shipped from New Zealand. The trial court found for the defendant on the amended complaint, answer and stipulated facts. Plaintiff has appealed from the judgment on the finding.

Plaintiff, a New York corporation, and the defendants, doing business in Chicago, made a contract October 9, 1946, for the sale to defendants of approximately 56,000 lbs. of New Zealand casein. During October and November, 1946, a maritime strike was in effect

on the United States Pacific Coast and ships from the Far East were rerouted to Vancouver, B. C. On November 26, 1946, the casein was loaded on the steamship "Waitomo" at Wellington, New Zealand. The "Waitomo" arrived in Vancouver, B. C. February 19, 1947. The casein arrived in Chicago by rail on March 12, 1947. Defendants refused to accept delivery and refused to pay for the casein on demand. Subsequently the casein was placed in storage and on May 8, 1947, was bought by defendants, without prejudice to the claims of either of the parties, at 23¢ per lb. This suit followed.

The stated reason for the refusal of defendants to accept the shipment was that there was an unreasonable delay in the delivery. In the decision of the trial court there is implied a finding that the defendants under their contract were not bound to accept, and pay for, the shipment of casein. The question for us is whether the trial court correctly decided the question of law on the stipulated facts.

The contract of sale was typewritten on plaintiff's form. Under

> "Quantity )
> Description )
> Price ) "

there were provisions for quantity and quality and the further provision "at 43¢ per pound, Gross for Net, In Bond, C. I. F. Pacific Coast." War Risk Insurance was to be purchased "for buyer's account." The "shipping instructions" were "October shipment from New Zealand—subject freight available." The "Terms" required defendants to establish "immediately" a letter of credit in plaintiff's favor, preferably at a named San Francisco bank against the invoice and railroad bill of lading or steamship company delivery order, whichever defendants desired.

On October 15, 1946, defendants wrote plaintiff enclosing a copy of the accepted contract. They said that they would advise plaintiff about the war risk insurance in a few days, and that they were ordering a letter of credit, to expire December 30, 1946, against invoice and railroad bill of lading. November 1, 1946, defendants advised plaintiff to arrange the war risk insurance "along with the rest of the insurance" and said they had originally thought the C. I. F. provisions included war risk insurance. November 4th, plaintiff made it plain that C. I. F. did not include war risk insurance. November 18 plaintiff asked that the expiration date of the letter of credit be extended to January 30, 1947, as it was advised the casein was "going forward on the 'Waitomo' due to arrive in Vancouver early in January" and would keep the defendants advised of the "exact date of arrival." November 26th, defendants wrote agreeing to the extension of the expiration date of the letter of credit. December 10th, plaintiff wrote asking for shipping instructions, by return air mail, stating it had received its documents on the shipment and that the "Waitomo" was due in Vancouver "within the next few weeks." December 17th, defendants sent the letter of credit, stating their understanding was that the invoice and railroad bill of lading would be presented to the San Francisco bank which would forward the material and send the papers to the First National Bank of Chicago. The next day plaintiff acknowledged receipt of the letter of credit, referred to the provision in the letter of credit for shipment from the west coast to Chicago and again requested shipping instructions, pointing out that unless these coincided with the provisions in the letter of credit the latter would have to be amended.

December 18th, plaintiff also requested a change in the letter of credit with respect to the west coast bank. December 20 defendants advised that the change had

347

been made. They sent instructions to ship to Chicago, giving detailed railroad routes and requested information on the mechanics of their payment of the duty at Vancouver. January 3 defendants wrote repeating the request about the duty and saying it understood the "Waitomo" was due in early January. Plaintiff responded January 7th saying it would pay the duty and bill defendants and said also it was advised the "Waitomo" would not arrive until mid-February and asked extension of the term in the letter of credit to March 15. January 23rd, defendants wrote asking "just when" the "Waitomo" had left New Zealand with the casein which was to be shipped "October-November" and stating it had necessarily purchased casein elsewhere to fill its resale orders. January 27 plaintiff advised defendants the "Waitomo" had left New Zealand November 28, was due mid-February and promised future advice of exact arrival and requested again the extension of the term of the letter of credit. Defendants refused to arrange the extension and on February 22 wrote plaintiff the casein would not be accepted "unless some adjustment is made." Plaintiff replied that in the absence of a specific claim there was no justification for an adjustment, that plaintiff had duly performed its contract and that the "unfortunate delay" was not its fault. March 4th, defendants wrote that they had been forced to pay 47¢ for California casein to fill resale orders in December-January.

Plaintiff, as part of the price of 43¢, paid freight charges and insurance on the casein from Wellington to destination; provided the war risk insurance and charged the cost to the buyer's account; paid the duty at Vancouver for defendants' account; caused the shipping instructions from Vancouver to Chicago to be followed; and thereafter, in Chicago, presented the

invoice, railroad bill of lading and draft to defendants who refused to pay.

A C. I. F. contract means that the purchaser pays a fixed price which covers *cost* of the goods, *insurance,* and *freight.* One of the recognized legal incidents of this type of contract is that the shipper fulfills his obligation when he has put the cargo on board and forwarded to the purchaser a bill of lading and policy of insurance with a credit note for the freight. *Thames & Mersey Ins. Co. v. United States,* 237 U. S. 19, 26. The parties agree that the contract of sale before us was not strictly a C. I. F. contract, although the sale price included cost of the merchandise, insurance and freight charges to destination. *Seaver v. Lindsay Light Co.,* 233 N. Y. 273, 135 N. E. 329. In the instant case under the contract as specified by the correspondence, plaintiff had the further obligations of paying duty, on behalf of defendants, at Vancouver and arranging for rail transportation to, and delivery of the merchandise in Chicago. Because of these circumstances and since the contract is not C. I. F. defendants contend title did not pass to them when the merchandise was put on board ship at Wellington and that delivery in March, 1947 was an unreasonable delay.

██ There was no time specified in the contract for delivery of the merchandise at destination. Delivery within a reasonable time is therefore implied. *Lamborn v. Log Cabin Products Co.,* 291 Fed. 435, 439. What is reasonable depends on the facts in each case. Defendants made the contract providing for "October shipment" with the qualification "subject freight available." The subsequent designation by defendants of October-November shipment did not remove the qualification. The "Waitomo" sailed from Wellington November 26th and defendants were so advised and acquiesced. It left Dunedin, New Zealand Decem-

349

ber 3. It landed at Sydney, Australia December 8 and left there January 8. After stopping at three islands en route it docked at Vancouver, B. C. February 19, 1947. Assuming, for this point only, that shipment from New Zealand was not satisfied until the ship left Dunedin December 3rd, our view is no wise changed. The ''Waitomo'' was the only ''freight available'' and either date fulfilled the contract provision.

██ The time consumed in the voyage from New Zealand to Vancouver does not make the delay in delivery unreasonable. We are speaking now of delivery of possession of the merchandise, not of title. Whatever contingencies caused the delay were beyond the shipper's control (*Jones v. Winter,* 204 N. Y. S. 454) and the merchandise was on the only ship available to plaintiff in New Zealand. There is no claim that transportation from Vancouver was not timely. Finally the term in the letter of credit was not a contract term within which plaintiff had to make delivery. The correspondence between the parties plainly shows that it was not so construed by them. This correspondence did not at any time modify the broad provision of the contract. If defendants sought to modify in January plaintiff did not consent. Considered in the light of the contract of sale the time limit in the letter of credit did not limit the time for delivery. *Lamborn v. Log Cabin Products Co.,* 291 Fed. 435. We conclude that there was not an unreasonable delay in the delivery of the merchandise.

 Because the contract was not C. I. F. it does not follow that title did not pass when the merchandise was put on board at Wellington. The parties agree the contract was made in Illinois. Rule 4 (1) of Sec. 19 of the Uniform Sales Act [Ill. Rev. Stat. 1949, ch. 121½, par. 19, rule 4 (1); Jones Ill. Stats. Ann. 121.23, rule 4 (1)], adopted in Illinois in 1915, provides that in the absence of a contrary intention, where a sales

contract is for unascertained or future goods by description, and goods of that description in a deliverable state are unconditionally appropriated to the contract by the seller with the assent, expressed or implied, of the buyer, the title passes to the buyer. We think the instant case falls within this rule. There is no contrary intention in the contract or correspondence. The intention of the parties confirms the rule. The C. I. F. provisions, the purchase of the war risk insurance on buyer's account, payment of duty by the buyer, are indicia of the intention. When the casein was provided by plaintiff and loaded on the ship at Wellington, New Zealand, there was an appropriation to the contract, title passed to buyer, and plaintiff retained the documents, not to keep title, but to secure payment. *Rudin v. King-Richardson Co.*, 311 Ill. 513; *Collins v. Oliver*, 299 Pa. 372, 149 Atl. 647. That time of payment was postponed does not affect the passing of title. *Collins v. Oliver; Stearns v. Grand Trunk Ry.*, 156 Mich. 145, 120 N. W. 572. When title passed at Wellington the risk passed to defendants. This was recognized by their having the war risk insurance bought for their account and by the C. I. F. provisions under which the benefits of the marine insurance, included in the price, would be payable to the defendants.

Defendants rely on *Klipstein v. Dilsizian*, 273 Fed. 473; *Willits & Patterson v. Abekobei Co.*, 189 N. Y. S. 525; and *Carocopos v. Chieves*, 196 N. Y. S. 425. These are not applicable because they involve either weighing or inspection by buyer at destination. Clearly title could not have been intended to pass until the buyers were satisfied on weight or inspection.

██ The record shows that plaintiff assumed the obligation of seeing that the goods were transported from Vancouver to Chicago. When he took possession in Vancouver for that purpose the goods had already been appropriated to the contract and title had passed.

351

He was, in performing this obligation, the agent of the defendants to deliver possession. *Hughes v. Judd,* 254 Ill. App. 14.

██ It seems that the merchandise, under the bill of lading, was consigned to plaintiff. The bill of lading is not the contract of sale. *Chicago, R. I. & P. Ry. Co. v. North American Cold Storage Co.,* 244 Ill. App. 522. In any case since except for the form of the bill of lading title would have passed, we deem the consignment to plaintiff a means of securing performance by defendants. Sec. 20 (2), Sales Act (Chap. 121½, Ill. Rev. Stat. [Jones Ill. Stats. Ann. 121.24, subpar. (2)].) *Alberti v. Associated Fruit Co.,* 238 Ill. App. 11.

For the reasons given the judgment is reversed and the cause remanded with direction to enter judgment for plaintiff for $13,246.25.

*Judgment reversed and cause remanded with directions.*

BURKE, P. J., and LEWE, J., concur.