# CHARLESTON.

CENTRAL TRUST COMPANY, *Receiver, etc. v.* BANK OF MULLENS *et al.*

(No. 6564)

Submitted October 2, 1929. Decided October 8, 1929.

*Brown, Jackson & Knight* and *Lon H. Kelly,* for appellants.

*Hartley Sanders,* for Fidelity & Deposit Company of Maryland.

LIVELY, JUDGE:

The Bank of Mullens, prior to its failure, was legally designated as a state depository, and on April 17, 1926, executed a bond payable to the State in the proper penalty with Fidelity & Deposit Company of Maryland as surety conditioned that it would repay the State's money deposited with it together with 3% interest thereon. On April 20, 1927, the bank then being insolvent and now insolvent, was closed by the commissioner of banking and Central Trust Company was appointed as receiver. On this date, the bank had state money amounting to $18,249.50. On April 11, 1928, the Fidelity & Deposit Company of Maryland, surety on the bond, paid that sum to the State in discharge of its obligation as surety, and took from the state treasurer a written assignment of all the right, title and interest of the State in and to the assets of the Bank of Mullens, and a subrogation to the surety of all the State's rights and remedies against the bank in respect to the money paid. The receiver instituted this suit for convening the creditors, ascertaining the indebtedness of the bank, priorities of the creditors, and for the winding up of the affairs of the insolvent. The Fidelity & Deposit Company intervened by petition setting up its suretyship and payment of its obligation as such in discharge of the bond and claimed a preference against the assets of the bank by virtue of such payment to the State. The cause was referred to a commissioner before whom the Fidelity & Deposit Company proved its debt, claiming interest thereon at the rate of 6% per annum from date of payment to the State. The commissioner reported that the surety was entitled to 3% to which report the surety excepted, on the ground that 6% was not allowed. By decree of February 27, 1929, the court sustained the surety's exception to the report and entered the decree complained of allowing 6% from the time the debt was paid; and it is from this decree that the receiver prosecutes this appeal.

There is no controversy of fact and the issue is one of law clearly defined. Is the surety entitled to 6% interest as a preferred lienor? The surety affirms that it is so entitled, and the receiver denies. Thus the issue is made up. There can be no question of the right of the surety to be subrogated to the lien of the State which the latter holds against the bank. That lien extends, under the sovereignty doctrine *(Woodyard v. Sayre,* 90 W. Va. 295), to the assets of the insolvent bank in preference to the other general creditors. The State had its prerogative right to preference and priority over other creditors for the State's money on deposit together with interest at the rate of 3% per annum until paid. To these rights and remedies of the State, the surety company is subrogated.

It is quite well established that the remedy of the surety against his principal is upon the implied contract between him and his principal that the latter would repay the surety whatever sum he was legally compelled to pay, and his measure of damages in such case is that sum together with legal interest thereon. *Weimer* v. *Talbot,* 56 W. Va. 257; *Butler* v. *Butler's Adm'r.,* 8 W. Va. 674; *Feamster* v. *Withrow,* 9 W. Va. 296; *McNeil* v. *Miller,* 29 W. Va. 480; *Faires* v. *Cockrill, (Tex.),* 28 L. R. A., 528; *Memphis, etc.* v. *Dow,* 120 U. S. 287; *Appleford* v. *Snake River Mining Co.,* 122 Wash. 11, 210 Pac. 26, 29 A. L. R., 268; *Bushnell* v. *Bushnell,* 77 Wis. 435; *Holloman* v. *Oxford,* (Tex.), 168 S. W. 437. The surety's action is not on the original obligation between his principal and the creditor, but on the implied promise of the principal for reimbursement as above set out. Story Eq. Juris., 13th Ed., section 499C. The scope of the doctrine of subrogation in suretyship includes the "immediate transfer, by operation of law, to the promisor in suretyship, of all of the rights of the creditor against the principal whenever the promisor pays the debt or satisfies the obligation." Stearns on Suretyship, 3rd ed., sec. 244. The cases of *Shipman* v. *Bailey,* 20 W. Va. 140; *Pickens* v. *McCoy,* 24 W. Va. 344, and *Watson-Loy Coal Co.* v. *Monroe Coal Mining Co.,* 85 W. Va. 645, cited by the receiver, have no application here because those were cases on contracts by one party against the others for judgment on the obligations sued on, and which

cases hold that the rate of interest agreed upon in the contract must govern until the debt is paid by the debtor. Suretyship and subrogation were not there involved.

The cases are uniform that the surety who pays his principal's obligation is entitled to recover interest at the legal rate from the time he discharges that obligation; and that he is immediately subrogated to the securities and preferences of the creditor or obligee to whom he has made payment of the debt or obligation. Subrogation is independent of any agreement and rests upon principles of natural justice and equity. As was said by Lord Brougham in *Hodgson* v. *Shaw,* 3 Myl. & K. 183, ''A surety will be entitled to every remedy which the creditor has against the principal debtor, to enforce every security and all means of payment; to stand in the place of the creditor, not only through the medium of contract, but even by means of securities entered into without the knowledge of the surety; having a right to have those securities transferred to him though there was no stipulation for that; and to avail himself of all those securities against the debtor.'' The right of the surety to recover against his principal, as above stated, is for the amount paid by him with legal interest; but when he relies upon the lien of the creditor for payment of his recovery, he cannot enlarge that lien, nor the rights under it. He cannot attain any right under it which the creditor did not have. The right which the State had under its contract extended to recovery of the State's money with 3% interest and its lien for preference extended only to that amount with its 3% interest. A surety who pays a debt can acquire no greater rights than the creditor had at the time of payment. *Globe & Rutgers Fire Insurance Co.* v. *Hines,* 273 Fed. 774. (Certiorari denied 257 U. S. 643): 37 Cyc. 429. The cases are quite uniform on that proposition. The situation here is somewhat analagous to a payment by a junior lienor on land of a prior lien securing a debt at 5% in order to protect his subsequent lien. When he pays that debt and asserts the lien securing it he cannot enlarge that lien to recover a debt at a greater rate of interest as against other lienors. His amount of recovery under that first lien to which he is subrogated must be confined to the

rate of interest specified in the debt which it secures. The principle is well stated in *Faires* v. *Cockrill, supra,* as follows: "When the creditor in such a contract has a security from the principal obligor, or either of them, or if the debt itself constitutes a lien upon property of the debtor, as a vendor's lien, or if, from its nature, it be entitled to priority in payment over other debts of the debtor, the person paying the debt, not being a volunteer, will be subrogated to the securities, liens and priorities of the creditor to the extent that he makes payment of the debt; and if it be necessary from the character of the lien or security, in order to do full justice between the parties, equity will treat the original debt as subsisting, so far as may be necessary to accomplish that end," citing many cases. In the instant case the State had a lien for a specific sum (principal of its deposit and 3% interest) against all of the assets of the insolvent bank. It could claim no lien for a greater sum. The other creditors and depositors of the bank were entitled to rely upon the assumption that the State would invoke its sovereign lien only to the discharge of the agreed amount. We hold that when the surety company invokes the State's prerogative lien it steps in the shoes of the State and cannot enlarge the State's right for its own benefit. It was very proper for the surety to have a decree for the amount paid by it with interest at 6% from date of payment, but the decree is erroneous when it awards a *priority* in the payment at the rate of 6%. The priority to the surety should be for the sum paid by it together with 3% from time of payment. As to the other 3% to which the surety is entitled as against the bank, it has no preference over creditors of like class.

The decree will be reversed to the extent indicated and the cause remanded.

*Reversed in part; remanded.*