## Collins *v.* Oliver et al., Appellants.

Argued January 15, 1930. Before Moschzisker, C. J., Frazer, Walling, Simpson, Sadler and Schaffer, JJ.

*A. B. Geary,* of *Geary & Rankin,* with him *Kingsley Montgomery,* for appellants.—The contract was an absolute completed sale of the warehouse receipts and the whiskey: Linton v. Butz, 7 Pa. 89; Caulfield v. Van Brunt, 173 Pa. 428; Selznick v. Auto Co., 275 Pa. 1; Winslow v. Leonard, 24 Pa. 14; Ballentine v. Robinson, 46 Pa. 177; Henderson v. Jennings, 228 Pa. 188; Com. v. Hess, 148 Pa. 98.

The obligation was on Collins to pay the storage and other charges on the whiskey: McAbee v. Cribbs, 194 Pa. 94; Advance Industrial Supply Co. v. Copper Co., 267 Pa. 15; Miles v. Coal Co., 250 Pa. 147; Todd v. Wheeler, 194 Pa. 213; Blough v. Lochrie, 275 Pa. 491, 496; Greek v. Wylie, 266 Pa. 18.

When parties have, without fraud or mistake, put their engagements in writing, that is not only the best but the sole evidence of their agreement: Irvin v. Irvin, 142 Pa. 271.

*John E. McDonough,* for appellee.—The loss was on defendants: Robb v. Zern, 42 Pa. Superior Ct. 182; Miller v. Seaman, 176 Pa. 291; Hutchison v. Com., 82 Pa. 472; Sneathen v. Grubbs, 88 Pa. 147; Dannemiller v. Kirkpatrick, 201 Pa. 218; Mosser v. Lumber Co., 290 Pa. 67.

OPINION BY MR. JUSTICE SADLER, March 17, 1930:

This case is not free from difficulties. It involves a transaction in whiskey stored in a bonded warehouse in Baltimore, represented by certificates calling for 145 barrels, which plaintiff had agreed to buy from defendants, the holders thereof. He paid to them $6,090.86, being 25% of the purchase price. He obtained five barrels of the whiskey from the warehouse and after he had received this quantity, the remaining 140 barrels were sold by the warehouse company to third parties for the payment of storage and other charges due upon them, without notice to plaintiff or to defendants, with the result that plaintiff was not able to obtain any more of the whiskey called for by the certificates. He thereupon so notified defendants and made demand upon them for the return of the amount he had paid on account, which they refused to refund. This action was then brought by plaintiff to recover it, and defendants counterclaimed for the balance due on the entire quantity of the whiskey, amounting to $17,880.34, with interest. The case was heard by the court below without a jury under the Act of April 22, 1874, P. L. 109, and judgment was given for plaintiff for the amount of his claim, $6,090.86, with interest from a date named, from which defendants appeal.

This critical inquiry is: Who, under the agreement between the parties, was responsible for the unpaid storage and other charges against the liquor due to the warehouse company, plaintiff or defendants? Before considering the provisions of the contract specifically dealing with the payment of such charges, we shall determine the effect of the agreement as to the title to the liquor, for, in general, the duty to pay storage and other charges to preserve the goods is upon the owner. The agreement was in writing. It is dated April 26, 1921, and recites that the defendants are the owners of 145 barrels of whiskey in a bonded warehouse in Baltimore and hold 29 certificates of the Baltimore Distilling Company therefor, each for five barrels, and then proceeds as follows: "Whereas the said Edmund Oliver and James McKane have agreed *to sell and convey and dispose* of the said whiskey to the said Hugh Collins for the price or sum of three dollars and fifty cents ($3.50) per gallon, the number of gallons being fixed and agreed upon as shown by the above mentioned certificates. The said whiskey *to be paid for* by the said Hugh Collins as hereinafter set forth. The said Hugh Collins agrees to pay to the said Oliver and McKane the sum of five hundred dollars ($500.00) in cash upon the execution of this agreement, the receipt whereof is hereby acknowledged, and within thirty days thereafter to pay to the said Oliver and McKane the further sum of five thousand five hundred ninety dollars and eighty-six cents ($5,-590.86) in cash, which two sums represent twenty-five per cent. (25%) of the entire purchase price. As each certificate is surrendered and the liquor represented by said certificates is taken from bond, the said Collins agrees to pay in full, in cash, to the said Oliver and McKane the above named price of three dollars and fifty cents ($3.50) per gallon for each gallon represented by said certificate until the entire amount due said Oliver and McKane has been paid. The said Hugh Collins further agrees to assume and pay all storage and

other charges against said liquor from the date of said certificates, which it is understood was sometime in March, 1915; it being understood and agreed that all such charges already paid by the said Oliver and McKane shall be returned to them by the said Collins. The said certificates shall remain in the possession and control of said Oliver and McKane until the liquors represented by said certificates have been fully paid for as above *together with* all storage and other charges and when it is fully paid for the remaining certificates shall be delivered to and become the property of the said Hugh Collins. From and after January first, nineteen hundred and twenty two, the said Hugh Collins agrees to pay interest at six per cent. (6%) to the said Oliver and McKane for such unpaid balance as may be due them upon the liquors and the purchase price then remaining unpaid." (The above italics are ours.)

The court below concluded as a matter of law that the $6,090.86 which plaintiff paid was a payment to secure the execution of the contract, which means that in effect the contract was only an option and it is so termed by counsel for appellee. With this we are unable to agree. The contract was a sale. It contains no language which warrants the conclusion that what was to be accomplished by it was to give an option or that it was other than an actual sale. The vendors "agreed to sell and convey and dispose of" the whiskey to Collins for the price named and he covenanted that it was "to be paid for" by him "as hereinafter set forth." The two payments actually made "represent twenty-five per cent (25%) of the entire purchase price." After January 1, 1922, Collins was to pay interest on the unpaid balance of the "purchase price." The Sales Act of May 19, 1915, P. L. 543, section 18, provides: "Where there is a contract to sell specific or ascertained goods, the property in them is transferred to the buyer at such time as the parties to the contract intend it to be transferred"; and section 19 states as a rule for determining that intent,

"Unless a different intention appears......where it is an unconditional contract to sell specific goods, in a deliverable state, the property in the goods passes to the buyer when the contract is made, and it is immaterial whether the time of payment or the time of delivery, or both, be postponed." This codifies our decisions prior to the act: "When the terms of sale are agreed upon, and the bargain is struck, and everything the seller has to do with the goods is complete, the contract of sale becomes absolute as between the parties without actual payment or delivery, and the property, and the risk of accident to the goods, vests in the buyer": Perkins v. Halpren, 257 Pa. 402, 409; Henderson v. Jennings, 228 Pa. 188, 193; Com. v. Hess, 148 Pa. 98; Williston on Sales (2d ed.), section 259-63. The absolute obligation to pay interest on the purchase price unpaid, negatives the idea that a mere option for future purchase was intended, as does also the fact disclosed by the record, that appellee paid the fire insurance on the liquor until 1925. This is a charge normally assumed by the owner; and payment thereof by the buyer is evidence to show the understanding of the parties was that the title was vested in him: 24 R. C. L. 17. As all other elements point to a sale, the retention of the control of the warehouse certificates was solely to secure the payment of the price, and did not in any way affect the change of title. In the light of these factors, we conclude that the effect of the contract was to vest the whiskey in Collins. The cases cited by appellee are not in point. They involve contracts where the seller was to make delivery to the buyer and delivery had not been made.

We now come to the critical question as to whose duty it was under the contract to take care of the storage and other warehouse charges. The court below decided that there was no duty on the plaintiff to pay them until he removed the liquor and that such requirement under the contract was on defendants; that it was their duty to see that it was protected from forced sale for the storage

charges and that they were in default in not doing so. We are unable to reach this conclusion. Normally, risk of loss follows the title, and the responsibility is on the owner of goods to take the necessary steps to protect his property. "Unless otherwise agreed, the goods remain at the seller's risk until the property therein is transferred to the buyer, but when the property therein is transferred to the buyer the goods are at the buyer's risk whether delivery has been made or not": Sales Act, section 22. Hence, without any contract stipulation at all, it would seem that, as Collins owned the liquor, it was up to him to pay the charges. But the case is even stronger against him. The language of the agreement is, "The said Hugh Collins further agrees *to assume* and pay all storage and other charges against said liquor from the date of said certificates;......it being understood and agreed that all such charges *already* paid by the said Oliver and McKane shall be returned to them by the said Collins." "Assume" means "To take upon one's self (to do or satisfy); as to assume a debt": Webster's Collegiate Dictionary; Words & Phrases, 3d Series, page 691. It means the same as "assumes to pay": Words & Phrases, 1st Series, page 587. Hence it is that Collins expressly took upon himself the charges, and there is no language which limits or defers this assumption of them until he took the liquor from the warehouse. On the contrary, the further express words of the agreement negative such a construction and the idea that Oliver and McKane were to pay them, "it being understood and agreed that all such charges *already* paid by the said Oliver and McKane shall be returned to them by the said Collins." Had it been contemplated that they were to continue paying the charges, the writing would necessarily have provided not only that the charges already paid by them should be returned, but also that all thereafter paid by them should be reimbursed to them. It is of significance that Collins recognized that he was responsible for the

whiskey as it lay in bond; as has been pointed out, after the contract was entered into, he paid for the insurance on it. As the contract is written, we are of opinion it clearly shows that plaintiff and not defendants was responsible for the charges. It follows, therefore, that the failure to discharge them, with the resulting loss of the whiskey to both parties to the contract, was due to plaintiff's default.

The trial judge admitted testimony of the attorney who wrote the agreement and of Collins detailing conversations at the time it was signed. Collins testified that when they came to the paragraph in regard to the charges, he said that "all those charges to be paid on lifting the certificate or withdrawal......I turned to Mr. McKane......and said 'Now it is distinctly understood that this is the last dollar I pay until those certificates are lifted, or until the whiskey is withdrawn.' They said 'That is satisfactory and is fully understood,' " upon which assurance he says he signed the contract. McKane denied that anything was said, saying that "it was all in the contract." Josiah Smith, Esq., the attorney who prepared the contract, was not as explicit as Collins as to the conversation relating to the storage charges. He testified that Collins had raised the question as to the payment of any more money than the twenty-five per cent and had said, "Now, it is understood, is it, that this is the only money that I am to pay until I take out these certificates?" to which McKane replied, "That is perfectly satisfactory. That is understood," and that Oliver (who was dead at the time of the trial) nodded his head and said "That is all right." To our minds it is at least somewhat doubtful if the latter testimony relates to the payment of the storage charges, as the trial judge held since it would seem more clearly to refer to the payments to be made to Oliver and McKane, but if it does, its effect, as well as that of plaintiff's statement, was to alter and vary the terms of the written contract and was inadmissible under the

ruling laid down in Gianni v. Russell, 281 Pa. 320, and the other cases which have followed it, one of the latest being Fidelity Title and Trust Co. v. Garland, 291 Pa. 297.

It follows from what has been written that the judgment rendered in plaintiff's favor cannot stand. It is urged upon us by appellants that judgment should be entered by us in their favor under their counterclaim. We are not disposed to take this course. The case is a hard one for all concerned. It may be that plaintiff has a defense to the counterclaim which he has not interposed. If he has, he should have the opportunity to make it.

The first, second, fourth, fifth, sixth, seventh, eighth, ninth, twenty-third, twenty-fourth and twenty-fifth assignments of error are sustained and a new trial awarded.