## Bell Telephone Company of Pennsylvania, Appellant, *v.* Public Service Commission.

Argued March 15, 1935.

Before KELLER, P. J., CUNNINGHAM, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Benjamin O. Frick,* of *Evans, Bayard & Frick,* with him *William H. Lamb,* for appellant.

*Paul H. Rhoads* and *Richard J. Beamish,* with them *Samuel G. Miller* and *E. Everett Mather, Jr.,* for appellee.

OPINION BY JAMES, J., October 3, 1935:

On July 31, 1934, the Public Service Commission on its own motion, entered a rule upon the Bell Telephone Company of Pennsylvania to show cause why it did not secure the approval of the Public Service Commission, as required by Article III, Section 11, (b) of the Public Service Company Law when, on and subsequent to July 1, 1933, it borrowed cash for current requirements

from the American Telephone & Telegraph Company and gave its notes therefor, payable less than twelve months after date and specifically why it did not secure the approval of the Commission when it borrowed the following amounts: $875,000, on July 1, 1933, giving its demand note; (2) September 30, 1933, $600,000, giving its demand note; (3) September 30, 1933, $500,000 by giving its demand note; (4) October 2, 1933, $1,250,000 giving its demand note; (5) December 13, 1933, $2,-100,000 giving its demand note; (6) December 30, 1933, $900,000 giving its note payable eleven (11) months after date or prior thereto on demand; and also to show why penalties had not been incurred by the Bell Telephone Company.

An answer was filed by the respondent admitting that it had borrowed for current requirements the amounts and on the dates set forth, all of which were repaid at various times from January 25, 1934 to May 31, 1934. It averred that it did not secure the approval of the Commission because the Public Service Law contained an exemption as provided by Article III, Section 4 (d) and further that nothing in Article III, Section 11, (b) required any approval by the Public Service Commission. At the hearing it was admitted that the American Telephone & Telegraph Company is a holding company owning 100% of the common stock of the Bell Telephone Company of Pennsylvania. Respondent showed the purpose of the borrowings and their advantage to the Bell Telephone Company and offered exhibits of the legislative history of the Act of June 3, 1933, particularly with reference to Article III, Section 11, (b), and certain general orders of the Commission. The Public Service Commission made the rule absolute and held that the word "assumption" covered not only transactions of a secondary liability such as guarantor and endorser but also transactions of direct and original liability and that the transactions were within the pro-

visions of Article III, Section 11, (b), cl. 2. From the entry of the order this appeal was taken.

The Act of June 3, 1933, P. L. 1526, (66 PS §291, Pock. Pt.), amended Article III, Section 11 of the Act of July 26, 1913, P. L. 1374, (66 PS §291) by adding among others the following paragraph, to wit: "(b) Upon the approval of the commission evidenced by its certificate of public convenience first had and obtained, and not otherwise it shall be lawful for any public service company to enter into any transaction with a holding company or affiliated interest, if such transaction involves (1) the loan of money by the public service company, (2) the assumption of any obligation or liability whether as guarantor, endorser or otherwise by the public service company, or (3) the loan, sale, purchase, pledge or exchange of stocks, bonds, notes or other evidences of indebtedness by the public service company." The first clause relates to the loan of money by the public service company to the holding company and the second relates to the assumption by the public service company of any obligation or liability, whether as guarantor, endorser or otherwise of the holding company.

It is a fundamental rule of statutory construction that in determining the meaning of the various provisions in an act, consideration must be given to the old law and to the mischief or evil sought to be remedied by the enactment of the statute under consideration: Com. v. Charles, 114 Pa. Superior Ct. 473, 174 A. 907; Kates's Est., 282 Pa. 417, 423, 128 A. 97; West v. Lysle et al., 302 Pa. 147, 153 A. 131. Yet the language of the section in question must be interpreted and construed not in a forced or strained sense, but in the sense which it is commonly and ordinarily used and in the sense which is used in other sections of the act.

The original Public Service Company Law of July 26, 1913, P. L. 1374, did not deal in any manner with

transactions between public service companies and holding companies, and the amendments of the Act of June 3, 1933, P. L. 1526, were the first legislative enactments which dealt with such transactions concerning which certain abuses had arisen and which are still a source of much public interest. This legislation did not bar all transactions with the holding company, without commission approval, but only such specific transactions as are set forth in Paragraph (b), as in Paragraph (c) which covers contracts between the public service company and the holding company where the holding company furnishes services of various character among which is "financing," all that is necessary to make the contract effective is the filing of a true and correct copy of the contract with the Public Service Commission.

The word "assumption," means the act of assuming and "assume" has been defined as "to take to or on one's self": 5 C. J. 1375; Bouvier's Law Dictionary, vol. 1, p. 269; Collins v. Oliver, 299 Pa. 372, 149 A. 647. Black's Law Dictionary, 2nd Ed., p. 99, defines assumption as an act or an agreement of assuming or taking upon one's self; the undertaking or adoption of a debt or obligation resting upon another.

An examination of the Act of June 3, 1933, P. L. 1526, shows that the Legislature clearly distinguished between various transactions of public service companies as is shown by reference to the following sections: P. L. 1530, Sec. 4, (a) "To issue stocks ...... notes or other evidences of indebtedness," (b) "To dispose of securities ......" (c) "To guarantee or assume liability ......;" P. L. 1531, (d) "Before issuing, disposing of, guaranteeing or assuming liability on any securities ......;" P. L. 1532, "Whenever the commission refuses, in whole or in part an application to issue, dispose of, guarantee, or assume liability on securities;" P. L. 1533, "...... stocks ...... notes or other evi-

dences of indebtedness or other securities, issued or disposed of or assumed or guaranteed ......;" P. L. 1534, "...... to regulate and control the amount and character of securities to be issued, disposed of, guaranteed or assumed by any public service company."

In its ruling the Commission has eliminated as of no effect whatever the words "guarantor, endorser or otherwise," as defining or limiting the phrase "an assumption of an obligation or liability." It cannot be that the Legislature intended these words to be useless, but as intended to define the nature of an assumption, such as guarantor or endorser, both of which are of a secondary character and contemplate a liability or obligation of another party or parties which must be borne by the guarantor or endorser upon certain conditions.

The doctrine of ejusdem generis, which provides that where an enumeration of specific things is followed by some more general word or phrase such general word or phrase is to be held to refer to things of the same kind: 19 C. J. 1255, is not to be applied, but rather the general rule that words of a general import are limited by words of restricted import immediately following and relating to the same subject: 59 C. J. 980, and by the use of the language, "whether as guarantor, endorser, or otherwise," the Legislature modified and restricted the import of the word "assumption," to transactions of secondary liability.

The obligation or liability to be assumed necessarily implies that there was a liability or obligation of the holding company which was to be assumed by the public service company. If there was no obligation or liability of the holding company there was no assumption of an obligation or liability by the public service company, but solely its own original obligation for which moneys in full had been received. In distinguishing between transactions involving direct or original

liabilities and those of a secondary character, undoubtedly the Legislature understood that direct or original obligations are based upon a valuable consideration being received by the public service company; but in transactions of a secondary character the valuable consideration would be received by the holding company, which was the mischief or evil which was sought to be prevented.

The Commission, in its opinion that a borrowing constitutes the assumption of an obligation within the meaning of the above section, has relied in a measure upon the language in Article III, Section 4, (c) of the Public Service Company Law which provides as follows: "Upon the approval of the commission, evidenced by its certificate of public convenience first had and obtained, and not otherwise, and upon compliance with existing laws, it shall be lawful for any public service company ......"

"(c) To guarantee or assume liability for the payment of principal or interest of any securities issued by any other person, partnership or corporation." It will be noted that this section did not deal with relations to holding companies but was a general prohibition on the part of a public service company to guarantee or assume any liability for the payment of principal or interest of securities issued by any other person, partnership or corporation without commission approval.

In the opening section of Article III, Section 11, (b), the holding company is mentioned as the prohibited party and the prohibited transactions are thereafter enumerated; while in Article III, Section 4, (c) the prohibited transaction and the prohibited parties are both mentioned in (c). Under this latter section the Commission concedes that the amendment had in mind obligations of other parties which were to be guaranteed or assumed by the public service company. If the

language "guarantee or assume" in Article III, Section 4, (c), contemplated the payment of principal or interest of any securities issued by any other person, partnership or corporation, why should the language of Article III, Section 11, (b), which provides for the assumption of any obligation or liability whether as guarantor, endorser or otherwise, be so construed as to hold that an original or direct obligation of the public service company for which value was received, was the assumption of an obligation or liability? If the words "guarantee and assume" in Article III, Section 4, (c), contemplate the obligation or liability of another party or parties, the words "assumption of any obligation or liability whether as guarantor, endorser or otherwise" must have contemplated an obligation or liability of the other party, to wit, the holding company.

In thus concluding that the notes in question were not an "assumption" of an obligation or liability, we are not defeating the purpose of this section. The evil or mischief which the Legislature intended to prevent was the depletion of the resources of the public service company by the holding company either by the loan of its money to the holding company or by the taking upon itself of liabilities or obligations of the holding company or by the sale, loan, exchange, etc., of its securities to the holding company. If the holding company parted with its moneys for the use of the public service company, the amendment did not contemplate that as the mischief or evil to be remedied.

Respondent contends that it was authorized to incur the obligations (being for a period less than twelve months) by virtue of Article III, Section 4, (d) of the Public Service Company Law, as amended, which provides:

"The provisions of this act contained in regard to certificates of public convenience shall not apply to the issuance of ......, notes, ...... payable at periods

of less than twelve months, nor to the pledging or re-pledging of stocks, trust certificates, bonds, or other evidences of indebtedness to secure such bonds, notes, or evidences of indebtedness payable at periods of less than twelve months; ......"

If the transactions involved were the "assumption of an obligation or liability" we are convinced that the general language of Article III, Section 4, (d), would not overcome the specific provisions of Article III, Section 11, (b), for the well established principle that where there is in the same statute specific provisions relating to a particular subject, they must govern, although there are also general provisions in other parts of the statute, which if they stood alone would be broad enough to include that subject: Davis' Appeal, 314 Pa. 357, 361, 172 A. 399. However, as the transactions (being notes for less than twelve months) were not within the provisions of Article III, Section 11, (b), the public service company was not required to obtain a certificate of public convenience.

In view of this conclusion, we deem it unnecessary to discuss the history of the legislation or the alleged interpretation placed upon the sections in question by the Commission itself.

Order reversed.

Judge BALDRIGE did not participate in this case.