352 S.E.2d 729

**Mary E. RAY, Individually, and as Executrix of the Estate of Rex C. Ray, Deceased**

**v.**

**Grant E. DONOHEW, Naomi R. Donohew, and Nathan Donohew.**

**No. 16833.**

Supreme Court of Appeals of West Virginia.

Dec. 9, 1986.

Rehearing Denied Feb. 17, 1987.

George S. Sharp, Kay Casto & Chaney, Charleston, for appellant.

J. Nicholas Barth, Charleston, for appellees.

McGRAW, Justice:

The appellant, Mary E. Ray, individually, and as the executrix of the estate of her deceased husband, Rex C. Ray, appeals from a final order of the Circuit Court of Jackson County entered on January 31, 1985, which dismissed an action brought by her against the appellees, Grant E. Donohew and Naomi R. Donohew, husband and wife.[1] Mrs. Ray had sought to recover $312,575.23, with interest thereon, under the theories of breach of contract and subrogation. Because we find that a breach of contract has occurred and that subrogation is a proper remedy under the facts and circumstances of this case, we reverse the judgment of the Circuit Court of Jackson County and remand to that court with instructions to enter judgment for the appellant.

I.

On June 19, 1978, Grant E. Donohew and Rex C. Ray purchased, as tenants in common, 444.862 acres of land in Jackson County, which we will sometimes refer to as the "Property." In order to finance the purchase, Grant Donohew and his wife Naomi and Rex Ray and his wife Mary borrowed $1,500,000.00 from The National Bank of Commerce of Charleston. The Donohews and the Rays executed a deed of trust dated June 26, 1978, conveying the Property to trustees for the Bank to secure a promissory note of the same date made payable to the Bank in the principal sum of $1,500,000.00.

As additional collateral and security for payment of the promissory note, the Bank required Mr. Ray to pledge to the Bank certain State of West Virginia road bonds having a total face value of $550,000.00. In connection with this pledge, the Donohews executed an agreement and deed of trust dated June 26, 1978, granting and conveying to a trustee for the Rays, as the beneficiaries, two other parcels of real estate in Jackson County, consisting of a 17 acre tract, more or less, near U.S. Route 33 and Ripley, and a 67 acre tract, more or less, in Evans. The agreement and deed of trust provided, in part, that it was the intention of the parties to "guarantee and protect such additional security advanced

1. The Donohews' son Nathan was also named as a defendant, but no issues concerning him are involved in this appeal.

by Rex C. Ray and to further assure the payment by Grant E. Donohew of his obligations" under the promissory note. The parties further agreed that the agreement and deed of trust was to operate as a first lien upon the two parcels with the understanding that the Rays could commence foreclosure proceedings only if the Donohews defaulted on the indebtedness owed to the Bank.

On July 13, 1978, Mr. Donohew and Mr. Ray entered into an agreement and certificate of limited partnership under the name of G.E. Development Partners. Mr. Donohew was designated as the sole general partner and Mr. Ray was designated as the sole limited partner. The Donohews and the Rays then conveyed the Property in question here to the newly formed limited partnership.

Mr. Ray's health began to deteriorate shortly after these events. He spent much of two and one-half years prior to his death on January 2, 1981, in a hospital. At the same time, the financial promise of the land development venture undertaken by G.E. Development Partners was diminishing because increasing interest rates generally depressed the demand for land. In 1980, the Donohews and the Rays, unable to sell lots as anticipated, defaulted on an interest payment of $131,451.38 due to the Bank on the promissory note.

Because of these circumstances, the Rays expressed their desire to be relieved of liability on the promissory note and to dissolve the limited partnership. Sometime prior to December 31, 1980, an oral agreement was reached between Mr. Ray and Mr. Donohew whereby Mr. Ray agreed to assign his entire interest in the limited partnership to Mr. Donohew in consideration for the assumption by Mr. Donohew of the entire indebtedness and obligation on the promissory note and the Bank's release of the Rays from liability on the promissory note. It was further agreed that the parties dissolve G.E. Development Partners.

Mr. Ray died before any action could be taken with regard to the oral agreement. However, after her husband's death, Mary Ray, individually and as the executrix of Mr. Ray's estate, agreed to carry out the understanding between Mr. Ray and Mr. Donohew. Mrs. Ray and the Donohews thereupon executed an undated written agreement, hereinafter referred to as the "Agreement," which detailed the obligations and duties of the parties in regard to the joint and several liability on the promissory note. The Agreement reflected the fact that the Bank refused to release Mrs. Ray as a co-obligor on the promissory note unless Mrs. Ray agreed to reaffirm the pledge of the road bonds to the Bank and to execute a subordination agreement with respect to the agreement and deed of trust executed by the Donohews on June 26, 1978.

The pertinent provisions of the Agreement regarding the respective obligations are:

> 1. Mary E. Ray as Executrix of the Will of Rex C. Ray and Mary E. Ray individually as the sole distributee and beneficiary under the Will of Rex C. Ray will assign and convey to Grant E. Donohew the entire interest of the estate of Rex C. Ray in the limited partnership. Such conveyance will be in consideration of (a) the assumption by Grant E. Donohew of any and all liability, obligations and indebtedness (except for the obligation created by the pledging of collateral as described in paragraph 5 below) of the Estate of Rex C. Ray and of Mary E. Ray individually on the note or any renewal of or substitution for the note and (b) the obtaining and delivery by Grant E. Donohew from the Bank of a full and complete release of such liability, obligation and indebtedness. Such assignment will be in the form annexed hereto as Exhibit "X".
>
> . . . .
>
> 5. Mary E. Ray, as Executrix of the Estate of Rex C. Ray, and Mary E. Ray, individually, agree to reaffirm the pledge as collateral for the loan from the Bank to be assumed by Grant E. Donohew and Naomi R. Donohew those certain State of West Virginia Road Bonds previously pledged as collateral to the Bank, and to

make such reaffirmation of pledge in the form of Exhibit "E" attached hereto.

On February 2, 1981, the Donohews executed a deed of trust note bearing date December 31, 1980, payable to the Bank in the principal amount of $1,386,102.93,[2] which was given as a substitution for the promissory note under which the Donohews and the Rays were jointly and severally liable. Prior to execution of the new deed of trust note, Mr. Donohew cured the existing default on the promissory note by paying the interest then owing. In order to secure payment of the deed of trust note, the Bank retained the deed of trust dated June 26, 1978, and the Bank required the Donohews to execute another deed of trust dated February 2, 1981, conveying four parcels of Jackson County real estate to trustees for the Bank. This conveyance included the 17 acre tract and a 46.295 acre portion[3] of the 67 acre tract previously conveyed by the Donohews to trustees for the Rays under the agreement and deed of trust dated June 26, 1978.

Simultaneously with the execution of the deed of trust note, the Bank executed a release dated February 2, 1981, which discharged the estate of Rex Ray, and Mary Ray, individually, from any and all obligations under the promissory note. The release, however, provided that it did not constitute a release of any of the rights or privileges which the Bank had with respect to Mr. Ray's pledge of the road bonds as additional collateral for payment of the promissory note.

In furtherance of the Agreement, Mrs. Ray executed a reaffirmation and pledge of collateral agreement and delivered the bonds to the Bank. Additionally, on February 18, 1981, Mrs. Ray executed a subordination agreement whereby she agreed that the agreement and deed of trust executed by the Donohews on June 26, 1978, would be subordinated to the deed of trust made by the Donohews to trustees for the Bank as security for payment of the deed of trust note. She also assigned to Mr. Donohew any interest owned by her or by the estate of Mr. Ray in the limited partnership. On that same day G.E. Development Partners conveyed the Property to Mr. Donohew, excepting therefrom those parcels previously conveyed. The limited partnership was then dissolved.

The Donohews later defaulted on payment of the indebtedness of $1,386,102.93 due to the Bank under the deed of trust note dated December 31, 1980. Because of this default, the Bank's trustees foreclosed on the deed of trust dated June 26, 1978, and on the corrective deed of trust dated January 7, 1982. The proceeds of the foreclosure sales were insufficient to pay the indebtedness due to the Bank, however, and a deficiency totalling $356,491.89 remained owing to the Bank. Pursuant to the terms of the reaffirmation agreement executed by Mrs. Ray, the Bank's trustees sold the bonds for $433,452.35. The proceeds were first applied to the deficiency, and the balance was refunded to Mrs. Ray.

On November 1, 1983, the agreement and deed of trust executed by the Donohews on June 26, 1978, for the benefit of the Rays, was foreclosed upon by Mrs. Ray's trustee. That portion of the 67 acre parcel which had not been subordinated by Mrs. Ray to the Bank was sold for the sum of $39,108.85.

## II.

This action arose from these complicated facts. On January 13, 1983, the appellant, Mrs. Ray, filed a complaint in the Circuit Court of Jackson County praying for a judgment against the Donohews. Mrs.

2. After the formation of G.E. Development Partners, certain conveyances were made by the limited partnership out of the Property. A partial release of the deed of trust previously executed in favor of the Bank was obtained at the time of each conveyance. Incident to these transactions, the principal amount of the Promissory Note was reduced from $1,500,000.00 to $1,386,102.93.

3. On January 7, 1982, the Donohews executed a corrective deed of trust to the trustees for the Bank correcting an error in the deed of trust dated February 2, 1981. The Donohews had intended that the 46.295 acre parcel therein conveyed should have been a 60.356 acre parcel.

Ray sought recovery under the Agreement from the Donohews on a breach of contract theory and under the doctrine of subrogation.

Following a bench trial, the circuit court held that the appellees were not liable to Mrs. Ray in any amount. The circuit court concluded that the assumption of the promissory note by the Donohews substantially benefited the Rays and that the pledge of the Bonds was made without any right of subrogation. Additionally, the circuit court found that a limited partnership existed when the bonds were foreclosed upon and, therefore, any recovery by Mrs. Ray would require a showing that she had sustained losses greater than the appellees' losses. The trial court allowed Mrs. Ray ten days from the entry of its order to present additional evidence on this issue; however, no such evidence was presented.

The transcript of the proceedings held before the circuit court on October 15, 1984, reveals that the circuit court's analysis and resulting conclusions were premised, in part, on the belief that a general partnership relationship initially existed between Mr. Donohew and Mr. Ray and that their partnership was transformed into a limited partnership by virtue of the subsequent agreements. In fact, the relationship between Mr. Ray and Mr. Donohew was, from its inception, a limited partnership, G.E. Development Partners, which was dissolved on February 18, 1981, as a result of the various agreements between the parties and the conveyance of the partnership assets to Mr. Donohew.

III.

The appellant's assignments of error are as follows: (1) the circuit court erred in holding that the appellant was not entitled to recover from the appellees under the doctrine of subrogation; (2) the circuit court erred in holding that the appellees were not liable to the appellant by reason of a breach of contract with the appellant to pay the promissory note to the Bank; and (3) the circuit court erred in holding that the relationship between the appellant and the appellees at the time of the Bank's foreclosure on the bonds was that of a limited partnership.

Mrs. Ray argues that the documents executed in accordance with the Agreement between her and the Donohews resulted in a novation which altered the status of the parties. According to Mrs. Ray, the Donohews became primarily liable on the deed of trust note dated December 31, 1980, and she became secondarily liable as a guarantor by reaffirming the pledge of the bonds as additional collateral securing payment of the Donohews' primary liability to the Bank. Thus, Mrs. Ray contends that she became subrogated to the rights of the Bank upon the default by the Donohews and the subsequent sale of the bonds by the Bank to pay the deficiency.

Mrs. Ray's second assignment of error is based on a breach of contract theory. She argues that the circuit court erred in holding that the appellees were not liable by reason of a breach of contract with the appellant to pay the debt owed to the Bank. As previously discussed, the Agreement between the Donohews and Mrs. Ray provided, in part, that Mrs. Ray would assign her interest and the interest of her husband's estate in G.E. Development Partners to Mr. Donohew in consideration for the assumption by Mr. Donohew of liability on the promissory note and the Bank's release of Mrs. Ray from such liability. On February 2, 1981, the Donohews executed a deed of trust note as a substitution for the promissory note, and the Bank executed a release discharging Mrs. Ray from liability on the promissory note. However, the Bank retained its rights with respect to the bonds pledged by Mrs. Ray as additional collateral. Mrs. Ray contends that the Donohews breached their express agreement to pay the debt owed to the Bank when they defaulted on the deed of trust note. She argues that the Donohews' failure to pay the debt resulted in the sale of her bonds and, thus, she is entitled to a recovery from them under a breach of contract theory as well as under a right of subrogation.

Mrs. Ray's final assignment of error is that the circuit court erred in holding that the relationship between Mr. Ray and Mr.

Donohew was that of a limited partnership at the time of the Bank's foreclosure on the bonds, and in holding that she would have to show that her losses exceeded those sustained by the Donohews as a condition precedent to recovery.

IV.

In Syllabus Point 2 of *Perlick & Co. v. Lakeview Creditor's Trustee,* 171 W.Va. 195, 298 S.E.2d 228 (1982), this Court outlined the elements of a novation as follows:

> Novation is generally defined as a mutual agreement among all parties concerned for discharge of a valid existing obligation by the substitution of a new binding obligation on the part of the debtor or another. Thus, the necessary elements of a novation are (a) a previous valid obligation, (b) a consent by all parties to the new contract, (c) an abatement of the old contract and (d) a new contract which is valid and enforceable. Without any of these essential elements, there is no novation.

In *Perlick,* we recognized the well established principle that a novation is not to be presumed. There must be an explicit showing that a novation was the definite intention of all parties concerned. *Perlick,* 171 W.Va. at 199, 298 S.E.2d at 232 (citing *Fredeking v. Read,* 113 W.Va. 722, 726, 169 S.E. 387, 389 (1933)).

In the present case, there is no disagreement that the original promissory note was a valid and binding obligation of the Rays and the Donohews to the Bank. Nor is there any dispute that all of the parties consented to the execution by the Donohews on February 2, 1981, of the deed of trust note dated December 31, 1980, payable to the Bank in an amount equal to the principal then owed under the promissory note. Simultaneously with the Donohews' execution of the deed of trust note, the Bank executed a release dated February 2, 1981, which released the Rays from all liability on the promissory note. The release, however, did not constitute a release of any of the rights or privileges which the Bank had with respect to the bonds pledged as additional collateral by the Rays. Nevertheless, by executing the release and accepting the deed of trust note, a valid and enforceable obligation owed by the Donohews, the Bank abated the promissory note and released Mrs. Ray from personal liability thereon. Therefore, we find that a novation was the definite intention of all parties concerned. Accordingly, we turn our attention to the central issues raised on appeal. Namely, whether the Donohews breached their obligation to assume the liability under the promissory note, and, if so, whether the doctrine of subrogation is applicable to allow recovery by Mrs. Ray.

Resolution of the first issue depends on a determination of what obligation the Donohews owed because of their assumption of the promissory note. The words "assume" and "assumption" mean "to take upon one's self." Where the assumption of a debt is involved, the words "assume" and "assumption" are construed to mean that the person assuming will become personally liable by paying or otherwise discharging the debt.[4]

4. *See, Virginia v. West Virginia,* 238 U.S. 202, 35 S.Ct. 795, 59 L.Ed. 1272 (1915) (where the State of West Virginia assumed equitable portion of public debts of original Commonwealth of Virginia, the undertaking was to take upon herself the liability for principal and interest); *Larson Const. Co. v. Oregon Auto Ins. Co.,* 450 F.2d 1193 (9th Cir.1971); *New York Cent. R. Co. v. General Motors Corp.,* 182 F.Supp. 273, 290 (N.D.Ohio 1960); *Manget Foundation, Inc. v. White,* 101 Ga.App. 239, 113 S.E.2d 235 (Ga.Ct.App.1960); *Northwestern Classical Academy v. Edmonds,* 214 Iowa 310, 242 N.W. 49 (1932); *Proctor Trust Co. v. Neihart,* 130 Kan. 698, 288 P. 574 (1930); *Despatch Oven Co. v. Rauenhorst,* 229 Minn. 436, 40 N.W.2d 73 (1949); *International Mill & Timber Co. v. Kensington Heights Homes Co.,* 215 Mich. 178, 183 N.W. 793 (1921); *Mann v. Ferdinand Munch Brewery,* 225 N.Y. 189, 121 N.E. 746 (1919); *Alvord v. Banfield,* 85 Or. 49, 166 P. 549 (1917); *Collins v. Oliver,* 299 Pa. 372, 149 A. 647 (1930); *Bell Telephone Co. of Pennsylvania v. Public Service Comm'n of Pennsylvania,* 119 Pa.Super. 292, 181 A. 73 (1935); *Texas Employers' Ins. Ass'n v. Texas & P. R. Co.,* 129 S.W.2d 746, 749 (Tex.Civ.App.1939); *Lenz v. Chicago & N.W.R. Co.,* 111 Wis. 198, 86 N.W. 607 (1901); *see also* 7 C.J.S. *Assume* p. 122 (1980 & Supp. 1986); 7 C.J.S. *Assumption* p. 158 (1980 & Supp 1986); 4A Words and Phrases, *Assume* p.

In the present case, Mrs. Ray assigned to Mr. Donohew all interest owned by her or by Mr. Ray's estate in the limited partnership, G.E. Development Partners, in consideration for the assumption by the Donohews of the debt owed to the Bank on the promissory note. As previously noted, as a condition for releasing Mrs. Ray from personal liability, the Bank required Mrs. Ray to repledge the bonds to the Bank as additional collateral and to subordinate her rights in the agreement and deed of trust executed by the Donohews on June 26, 1978, to the new deed of trust executed by the Donohews as security for payment of the deed of trust note. The appellees argue that they assumed all liability on the promissory note except for the liability created by the repledge of the bonds as additional collateral. According to the appellees, the foreclosure on the bonds resulted from Mrs. Ray's reaffirmation of the pledge to the Bank. The appellees argue that this condition was not imposed by them, but was imposed by the Bank as a condition for releasing Mrs. Ray from personal liability on the promissory note.

We disagree with the appellees' assessment of the legal significance of the facts and circumstances of this case. The fact that the Bank required Mrs. Ray to reaffirm the pledge of the bonds as additional collateral did not relieve the appellees from their duty to pay or otherwise discharge the debt which they assumed in consideration for the Rays' interest in the limited partnership. To the contrary, the condition imposed by the Bank for releasing Mrs. Ray from personal liability is irrelevant to the obligation owed by the appellees to pay or otherwise discharge the debt they assumed.

We do find it significant that the appellees defaulted on the deed of trust note; that the collateral conveyed by the appellees to the Bank's trustees was not of sufficient value to discharge their obligation; and that the Bank proceeded to foreclose on the bonds pledged by Mrs. Ray as additional collateral in order to cure the deficiency. There can be no dispute that foreclosure on the bonds would not have been necessary if the appellees had paid the debt, or if they had conveyed sufficient collateral to the Bank. Therefore, we conclude that the appellees breached their Agreement with Mrs. Ray to discharge the debt owed to the Bank, and that this breach resulted in the sale of the bonds pledged by Mrs. Ray.

The next issue which we address is whether the doctrine of subrogation is applicable under the facts and circumstances of this particular case. The appellees contend that the doctrine of subrogation is inappropriate in this controversy because the agreements and intentions of the parties negate its application. They argue that the provisions of Paragraphs 1 and 5 of the Agreement show that the parties did not intend for a right of subrogation to be created, and that this language rebuts the appellant's claim that an implied promise of reimbursement existed with respect to the sale of the bonds. The appellees contend, in the alternative, that subrogation should be denied because the appellant took a separate security for the protection of the pledged bonds by retaining the agreement and deed of trust dated June 26, 1978, which provided that the two parcels of land conveyed thereby could be sold for the benefit of the appellant if the appellees defaulted and the Bank foreclosed on the bonds.

The agreement and deed of trust was not released by the appellant following the death of her husband, but was subordinated by her to the deed of trust taken by the Bank to secure payment of the deed of trust note executed by the appellees. Mrs. Ray agreed to this subordination in order to gain the release from the Bank with regard to primary liability on the promissory note. On November 1, 1983, after the appellees had defaulted and the Bank had foreclosed on the bonds, the separate security interest retained by Mrs. Ray was enforced and she recovered the sum of $39,108.85.

Based on the foregoing, the appellees argue that the doctrine of subrogation is

235 (1969 & Supp. 1986); 4A Words and Phrases, *Assumption* p. 264 (1969 & Supp. 1986).

negated in this instance by the agreements of the parties and by the retention of a separate security interest by the appellant.

"The doctrine of subrogation is that one who has the right to pay, and does pay, a debt which ought to have been paid by another is entitled to exercise all the remedies which the creditor possessed against that other." Syl. Pt. 1, *Bassett v. Streight,* 78 W.Va. 262, 88 S.E. 848 (1916). We have recognized on several occasions that subrogation is a derivative right founded upon principles of justice and equity. *Fuller v. Stonewall Cas. Co. of W.Va.,* 172 W.Va. 193, 304 S.E.2d 347 (1983); *State Farm Mut. Auto Ins. Co. v. De Wees,* 143 W.Va. 75, 101 S.E.2d 273 (1957); *Bank of Marlinton v. McLaughlin,* 123 W.Va. 608, 17 S.E.2d 213 (1941); *Buskirk v. State-Planters' Bank & Trust Co.,* 113 W.Va. 764, 169 S.E. 738 (1933); *Central Trust Co. v. Bank of Mullens,* 107 W.Va. 679, 150 S.E. 221 (1929); *Bassett,* 78 W.Va. 262, 88 S.E. 848; *Huggins v. Fitzpatrick,* 102 W.Va. 224, 135 S.E. 19 (1926); *Bates v. Swiger,* 40 W.Va. 420, 21 S.E. 874 (1895); *McNeil v. Miller,* 29 W.Va. 480, 2 S.E. 335 (1887).

Subrogation is applicable where a relationship of principal and surety or a relationship of primary and secondary liability exists, and the surety or the person with secondary liability has discharged the debt of the other pursuant to some legal liability. *See, e.g., State Farm Mut. Auto Ins. Co.,* 143 W.Va. 75, 101 S.E.2d 273; *Haines v. Kuykendall,* 120 W.Va. 549, 199 S.E. 449 (1938); Syl. Pt. 2, *Fredeking v. Read,* 113 W.Va. 722, 169 S.E. 387. The right of subrogation arises when a surety has pledged property for the debt of another as well as when the surety is personally liable to pay the debt of another. *See* 73 Am.Jur.2d *Subrogation* § 53 (1974). The remedy against the principal is based on the principal's implied promise to reimburse whatever sum the subrogee was required to pay with legal interest thereon. *See Central Trust Co.,* 107 W.Va. 679, 681, 150 S.E. 221, 221–22. Subrogation, however, will not be applied in every instance where a party secondarily liable has paid or otherwise discharged the debt of a party principally liable thereon. Certain limitations have been recognized which, if applicable to the facts and circumstances of the particular case, will work to deny the application of subrogation.

As a general rule, subrogation will not be decreed until the entire debt has been paid. Syl. Pt. 7, *Fuller,* 172 W.Va. 193, 304 S.E.2d 347; Syl. Pt. 2, *Price v. Lovins,* 117 W.Va. 624, 187 S.E. 318 (1936). However, this general rule does not require the subrogee to pay the entire debt, so long as the entire debt has been paid by some other source. In Syllabus Point 3 of *Brown v. Thompson,* 99 W.Va. 56, 128 S.E. 309 (1925), this Court held that, "A surety who has paid a part of the debt of his principal is entitled to pro tanto subrogation upon satisfaction of the balance due the creditor." Thus, subrogation is permitted in West Virginia where the subrogee has paid part of the debt, and the creditor has received the balance from the principal debtor or from some other source.

"Subrogation, being a creation of equity, will not be allowed except where the subrogee has a clear case of right and no injustice will be done to another." Syl. Pt. 6, *Fuller,* 172 W.Va. 193, 304 S.E.2d 347 (quoting Syllabus, *Buskirk,* 113 W.Va. 764, 169 S.E. 738). Furthermore, "[e]quity will not enforce subrogation 'in the face of a contract that negatives the idea of subrogation.' An agreement for 'another and different' security 'negatives the existence of any agreement for subrogation.' " *Buskirk,* 113 W.Va. at 767, 169 S.E. at 739 (citations omitted).[5] Thus, the right of subrogation can either be modified or extinguished through express contractual lan-

5. In *Buskirk,* where a junior lienor who had agreed in his deed of trust that any real estate taxes paid by him on behalf of the debtor would be added to the amount secured by the deed of trust, this Court held that the junior lienor was not entitled to be subrogated to the rights of the State of West Virginia, the taxing authority, in priority to the lien of a senior deed of trust. The Court regarded the agreement as providing a separate security to the junior lienor to the exclusion of subrogation.

guage, or by an action of the surety which is inconsistent with the right of subrogation, such as taking a different and independent security with the intent to rely on that security in the event of default by the principal. However, we feel that this holding of *Buskirk* is limited to the extent that the act must actually be inconsistent with subrogation, and the separate security must have been intended to provide an exclusive remedy to the surety. *See* 73 Am.Jur.2d *Subrogation* §§ 8, 9 and 11 (1974); 83 C.J.S. *Subrogation* §§ 3b and 51 (1953 & Supp.1986).

In this instance, Mrs. Ray's bonds were sold to discharge a debt which ought to have been paid by the appellees. Nevertheless, the appellees argue that Paragraphs 1 and 5 of the Agreement negate Mrs. Ray's right to subrogation. We do not agree. As we have already stated, the fact that the Bank required Mrs. Ray to reaffirm the pledge of her bonds as additional collateral did not relieve the appellees from their responsibility to pay the debt. Thus, the bonds pledged by Mrs. Ray would have never been sold had the appellees not allowed the deed of trust note to go into default. The language of Paragraphs 1 and 5 cannot now be used by the appellees to shield them from their responsibility to Mrs. Ray.

The appellees' argument that Mrs. Ray took another and different security in lieu of subrogation is also without merit. It is undisputed that Mrs. Ray retained the agreement and deed of trust dated June 26, 1978, as security against a default by the appellees. Likewise, there is no dispute that Mrs. Ray foreclosed on that security interest after the appellees had defaulted and the Bank had foreclosed on her bonds. We are not convinced, however, that her retention of the agreement and deed of trust was intended to provide an exclusive remedy in lieu of subrogation. Instead, we find that Mrs. Ray's retention of a separate security interest was the prudent thing to do under the circumstances and not inconsistent with her right to subrogation. We refuse to deny her subrogation because of this prudence.

To the contrary, we hold that Mrs. Ray has a clear right to subrogation and that no injustice will be done to the appellees under the facts and circumstances of this case. Indeed, to hold otherwise would result in a grave injustice to Mrs. Ray. After Mrs. Ray's assignment of her interest in the limited partnership, the appellees were in a position to reap all the benefits if the land development venture proved successful. Mrs. Ray, on the other hand, was satisfied to forego the potential benefits in exchange for the assumption of liability by the Donohews. Although the appellees bargained with Mrs. Ray to assume the debt with the possibility of reaping profits, they failed to discharge their obligation to the Bank and now seek to burden Mrs. Ray with what was rightfully their responsibility. To allow this would be inequitable to Mrs. Ray. We instead hold that Mrs. Ray is entitled to recover from the Donohews the amount of the deficiency paid from the sale of her bonds less the amount she recovered in foreclosing on the agreement and deed of trust dated June 26, 1978, with interest thereon from the date that the bonds were sold.

As a final matter, we have noted that the circuit court based its opinion, in part, on its findings that the limited partnership was still in existence and that the right of recovery depended on a showing by Mrs. Ray that she had lost more than the Donohews. In that event, the circuit court would have allowed recovery under the theory of contribution. The circuit court erred in determining that the relationship between the parties was a limited partnership and that the doctrine of contribution was applicable.

The doctrine of contribution is applicable where two parties are co-obligors on a note and one party pays a disproportionate share of the joint obligation. This rule was addressed in Syllabus Point 4 of *Newton v. Dailey*, 167 W.Va. 347, 280 S.E.2d 91 (1981): "Under our law, co-obligors on a note are jointly and severally liable. If one co-obligor is required to pay the entire obligation, he may seek contribu-

tion from his co-obligor for fifty per centum of the amount paid."

In the present case, a novation occurred whereby the appellees executed a new deed of trust note and the appellant was released from personal liability on the original promissory note. The appellees and the appellant were not co-obligors on the promissory note after the novation. Thus, the doctrine of contribution is not applicable to the facts and circumstances of this case.

Based on all the foregoing, we reverse the judgment of the Circuit Court of Jackson County and remand to that court for entry of judgment for the appellant.

Reversed and remanded.