DECISION
The Plaintiffs, Wayne DeMarco and Leesa DeMarco[1] ("Plaintiffs"), move for summary judgment. The motion is directed at Counts I and II of a six count complaint wherein both counts are cast as requests for declaratory relief. In Count I, Plaintiffs seek a declaration that Defendant Travelers Insurance Company ("Travelers" or "Travelers Insurance Company") is liable for an excess judgment rendered in a personal injury action brought by the Plaintiffs against Leo Doire and Virginia Transportation Corporation, Travelers' insureds. In Count II, Plaintiffs seek a declaration that Travelers Insurance Company is liable for the prejudgment and post-judgment interest that has accrued on the same judgment. As part of their requests for relief on both Counts I and II, Plaintiffs seek an order from this Court directing Travelers Insurance Company to pay all *Page 2 
such amounts to Plaintiffs.[2] Finally, Plaintiffs seek a Super. R. Civ. P. 54(b) final judgment on Counts I and II.
The parties' memoranda detail numerous facts and allegations, many of which are relevant to other claims alleged in the complaint, in particular the claims for bad faith and professional negligence. However, the facts material to the Plaintiffs' motion are few and are not genuinely disputed.
Travelers has objected to the Plaintiffs' motion and, in its objection papers, cross-moves for summary judgment on all of the Plaintiffs' claims against it.
 I Facts and Travel
Leo H. Doire ("Doire") was operating a motor vehicle owned by his company, Virginia Transportation Company ("Virginia"), when an accident occurred on September 10, 2003. At the time of the accident, Doire and Virginia were covered by a one million dollar liability policy issued by Travelers Insurance Company. Two of Doire's passengers, Wayne DeMarco ("DeMarco" or "Wayne DeMarco") and Paul Woscyna ("Woscyna"), were seriously injured in the accident. Narragansett Electric Company also suffered property damage in the amount of approximately $8000 when Doire's vehicle struck a telephone pole. All three made claims against Doire and Virginia. The parties do not genuinely dispute that DeMarco's injuries were severe or that DeMarco's claim[3] *Page 3 
posed a risk of significant monetary exposure. It also is undisputed that the Travelers' policy language gave Travelers the right to settle any claims or lawsuits brought against its insured and the right to direct whether or not, or how, the policy proceeds will be apportioned should there be multiple claimants.[4]
On February 2, 2004, before bringing his lawsuit against Doire and Virginia, DeMarco informed Travelers that his claim was substantial and made a demand for one million dollars. (Pls.' Ex. 2, letter, Feb. 2, 2004.) Travelers' Claims Director responded in writing on February 27, 2004. In her letter she acknowledged the policy limit demand but refused to consider it, pointing out that there were multiple claimants with serious injuries and stating, "Under the circumstances, Travelers cannot exhaust its policy limit of $1 million dollars by paying it to Mr. DeMarco." (Travelers' Ex. 8, letter, Feb. 27, 2004.)
When Travelers failed to pay, DeMarco filed his lawsuit, and the case was accelerated on the trial calendar because the amount in controversy exceeded $100,000. It is undisputed that Travelers knew that if it refused to settle with DeMarco and caused DeMarco to prove his claim at trial, DeMarco would attempt to enforce any resulting judgment against Travelers should that judgment exceed one million dollars.[5] *Page 4 
In March 2004, Travelers wrote Doire and Virginia to advise them of the lawsuit and to inform them that it had hired an attorney who had filed an Answer on their behalf. (Travelers' Ex. 32, letter, Mar. 9, 2004.) In the letter, Travelers stated: "You should give your complete cooperation relative to any requests made of you with regard to the defense of this case. Please do not discuss this case with anyone other than a representative of Gidley, Sarli, Marusak or Travelers Insurance." Id. Travelers further stated:
 "This Company shall retain the exclusive right to control and conduct the defense of the case. The Company shall, upon request, make available to you or your attorney all pertinent factual information the Company might have for the evaluation by you or your attorney as well as to permit you or your attorney to participate in the defense of this case." Id.
In that same letter, Travelers reminded Doire and Virginia that the claims arising from the September 10, 2003 accident might exceed their policy limits and invited them to retain an attorney, at their own expense, "with respect to your possible exposure in excess of the limit of the policy." Id.
It is undisputed that during the two years and nine months following his injury DeMarco made a total of four written demands or offers to settle his action for one million dollars, all of which Travelers refused to consider.[6] As is evident from the numerous exhibits and other papers submitted in connection with the instant motion, DeMarco tied his one million dollar settlement demand to the nature and extent of his injuries and not to the policy limits or the number of contenders for the policy proceeds — *Page 5 
an approach that Travelers claimed was unrealistic and, therefore, unreasonable. (Pls.' Ex. 10, letter, Jul. 31, 2006.) It is also undisputed that throughout, Travelers refused to consider settling any of the claims absent two conditions: (1) an agreement by all three claimants as to how the policy proceeds should be apportioned among them and (2) receipt of a general release of liability, as to all claims, from each of the claimants. Thus, consistent with its initial response to DeMarco's settlement demand, Travelers remained firm in insisting that two severely injured individuals, DeMarco and Woscyna, should accept significantly less than their respective injuries could be expected to fetch in a court of law in damages and interest[7] and, further, that they must work out between themselves the details of splitting too-small a pie — notions which grew more manifestly unrealistic as time went on.
It is undisputed that Travelers remained mindful of its own exposure in all of this and considered the question of whether or not it could be held liable for any excess judgment, concluding that it could not. Assuming the facts in favor of the non-moving party for purposes of this motion, it is also undisputed that Travelers genuinely believed its exposure for liability for an excess judgment could be pre-empted by
 ". . . simply writing to the two claimants who have now submitted demands to inform them of the limited coverage of $1,000,000 and to [sic] total demands thus far that greatly exceed the available coverage. They should be made aware that the coverage is available but will only be paid when all claimants agree to a prorate [sic] share of the available coverage." (Pls.' Ex. 8, letter, Apr. 13, 2006.) *Page 6 
Consistent with its position that DeMarco was unreasonable in refusing to shape his settlement demand to correspond to the circumstances, that is, multiple claimants and claims exceeding the policy limits, Travelers wrote to DeMarco's attorneys on July 31, 2006, reiterating its determination not to settle the DeMarco claim unless the Woscyna claim could be settled at the same time and upbraiding them for having failed to come up with a solution to dispose of both claims for a total settlement amount of one million dollars. As if a trial would solve a problem similar to trying to squeeze five pounds of flour into a two-pound sack, Travelers stated in its letter, ". . . we see absolutely no other resolution but that we must try this case." (Pls.' Ex. 10, letter, Jul. 31, 2006.) In a postscript to the letter, Travelers stated, "Perhaps you should study Asermely more closely." Id.
Then, on August 15, 2006, just weeks before DeMarco's personal injury trial was scheduled to begin, Travelers filed an interpleader action inThe Travelers Indem. Co. v. Wayne DeMarco et al., Prov. Super.Court, C.A. 06-4266. In that interpleader action, Travelers sought an order allowing it to pay the policy limits into the Court registry and prohibiting the release of the funds until such time as (1) all of the litigation between the parties was finally resolved or (2) DeMarco and Woscyna released Doire and Virginia Transportation Company from further liability. It is undisputed that this eleventh-hour attempt to legally foist its obligations onto the claimants was a component in Travelers' strategy of forcing them to settle their claims among themselves by "keep[ing] the pressure on [them] to accept the policy limits in settlement of all the claims in exchange for a release for the insureds, Virginia and Doire." (Opp'n of Defs., Michael R. DeLuca *Page 7 
and Gidley, Sarli, Marusak, L.L.P. to Pls.' Mot. Summ. J. as to Counts I and II of the Compl., 4, Oct. 3, 2007.)
On August 23, 2006 and notwithstanding Travelers' letter of July 31, 2006, DeMarco renewed his settlement offer.[8] At that time, the trial was scheduled to begin in less than a month. Accordingly, the letter contained a drop-dead acceptance date of August 30, 2006, which was eighteen days before the scheduled trial date. (Pls.' Ex. 3, letter, Aug. 23, 2006.)
August 30, 2006 came and went with Travelers still refusing to consider any individual settlement offer.
In early September 2006, approximately two weeks before the appointed trial date, the parties engaged in mediation. On September 5, 2006, in anticipation of that mediation, Travelers seemingly made an "about face" on the question of individual settlements by writing to them stating: "We will not entertain individual settlement offers until we have exhausted efforts to resolve all claims within the policy limits" but that "if we are unable to resolve all claims within the limits, we will proceed to settle the claims individually and will attempt through individual settlements to maximize the release of the insured from as much potential liability as possible." (Pls.' Ex. 13, Sept. 5, 2006.) *Page 8 
Whether Travelers' aim was to exert maximum pressure on DeMarco and Woscyna — as it had attempted to do by filing the interpleader action — or whether Travelers genuinely was re-calculating its strategy is immaterial for purposes of the instant motion. Either way, it is clear that Travelers understood its fiduciary responsibilities in the context of multi-claimant situations — notwithstanding that it unequivocally had refused to give consideration to any individual settlement offer thus far.
After the September 6, 2006 mediation failed, Travelers circulated to Doire and Virginia a communication reflecting its last minute attempts to negotiate the claims pending against them. In that communication Travelers stated: "[Woscyna] has informed me that [he] will not settle for $300,000. He did not give us a counter offer. He looks forward to learning the results of the DeMarco trial and believes that DeMarco will not do as well as his attorneys' [sic] think." (Travelers' Ex. 58, email communication, Sept. 8, 2006.)
On September 12, 2006, four days before trial, Travelers pressed its interpleader action, seeking a judicially sanctioned escape from its responsibility to attempt a negotiated settlement of some or all of the individual claims. However, the Superior Court, Mr. Justice Fortunato presiding, denied Travelers' interpleader request after Travelers failed to satisfy him that it lacked a substantial interest in the outcome of the DeMarco case.
On September 14, 2006, Travelers wrote all of the parties stating that it had "entertained" individual settlement offers and acknowledging that Woscyna had rejected an offer Travelers had extended to him. In the letter, Travelers agreed to pay $550,000 to DeMarco and $450,000 to Woscyna. As in the past, Travelers' offer was conditioned *Page 9 
upon both of them agreeing to apportion the policy limits between them and accepting the apportioned amounts in full settlement of their respective claims. (Travelers' Ex. 20, letter, Sept.14, 2006.) Although Woscyna agreed to accept the proposal provided DeMarco did the same (Travelers' Ex. 59, email communication Sept. 15, 2006), DeMarco refused to bite, and Travelers' proposal remained no less doomed than in the past.
Shortly before DeMarco's trial began on September 18, 2006, Travelers offered to pay him $550,000 toward a settlement of his claim, with Doire contributing $150,000 out of his own pocket, for a total settlement amount of $700,000. (Travelers' Ex. B, 188-89, Michael Deluca's Dep., Oct.2, 2007.) When DeMarco rejected the offer, Travelers made good on its threats to try the case and did so without having settled any of the claims, its policy limits still intact.
The DeMarco trial began on September 18, 2006 and, on September 22, 2006, the jury returned a verdict within two hours of retiring for deliberation. The jury returned a verdict in favor of DeMarco in the amount of $2,053,795.00. With statutory interest at $748,144.07, the total judgment was $2,801,939.07. The trial justice thereafter taxed costs in DeMarco's favor in the amount of $5879.32.
It is a matter of record that Travelers stipulated to liability during the trial and presented no witnesses on damages.
The resulting judgment put Doire and Virginia in default of their agreements with their business creditors and pushed them to the brink of bankruptcy.
Notwithstanding the judgment, Travelers refused to tender the one million dollars in policy proceeds to DeMarco and, instead, opted to pay $450,000 to Woscyna in *Page 10 
exchange for a release in favor of itself, Doire, and Virginia. (Travelers' Ex. 74, Release and Settlement of Claim, Nov. 21, 2006.) Travelers paid to DeMarco the remaining $550,000 of the policy proceeds which DeMarco accepted in partial satisfaction of the judgment.[9]
Meanwhile, DeMarco and Virginia's corporate counsel negotiated an agreement pursuant to which DeMarco acknowledged the $550,000 payment from Travelers; accepted an assignment of any claims that Doire and Virginia might have against Travelers; and gave Doire and Virginia a release of liability as consideration. DeMarco's release, unlike Woscyna's, specifically excluded Travelers from its terms. (Pls.' Ex. 26, General Release, Nov. 17, 2006.)
DeMarco contends that given the undisputed facts of this case, Travelers impliedly assumed the obligation to satisfy the excess judgment, interest included, when it declined to settle his case within the policy limits.
 II Standards for Ruling
The standards for ruling on a motion for summary judgment are well-settled. A party is entitled to summary judgment when an "examination of the `pleadings, affidavits, admissions, answers to interrogatories' and other materials viewed in the light most favorable to party opposing the motion, reveals no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."Stebbins v. Wells, 766 A.2d 369, 372 (R.I. 2001) (quoting Cain v.Johnson, 755 A.2d 156, 164 (R.I. 2000) (further citations omitted));see also Kirshenbaum v. Fidelity. Fed. Bank, F.S.B., 941 A.2d 213, 217
(R.I. 2008); Delta Airlines, Inc. v. Neary, 785 A.2d 1123, 1126 (R.I. 2001). It is *Page 11 
well-settled that a genuine issue of material fact is one about which reasonable minds could differ. See, e.g., Brough v. Foley, 572 A.2d 63,67 (R.I. 1990).
The moving party bears the initial burden of establishing that no genuine issue of material fact exists. See Heflin v. Koszela,774 A.2d 25, 29 (R.I. 2001) (citing Doe v. Gelineau, 723 A.2d 43, 48 (R.I. 1999)). If the moving party is able to sustain its burden, then the opposing party must "affirmatively assert facts that raise a genuine issue to be resolved." Hydro-Manufacturing, Inc. v. Kayser-RothCorp., 640 A.2d 950, 954 (R.I. 1994). While it need not disclose all of its evidence, the party opposing summary judgment must demonstrate that evidence beyond mere allegations exists to support its factual contentions. See, e.g., Ludwig v. Kowal, 419 A.2d 297, 301 (R.I. 1980);Nichols v. R.R. Beaufort Assocs., Inc., 727 A.2d 174, 177 (R.I. 1999);Bourg v. Bristol Boat Co., 705 A.2d 969, 971 (R.I. 1998). The trial justice reviews the evidence without passing upon its weight and credibility, and will deny a motion for summary judgment where the party opposing the motion has demonstrated the existence of a triable issue of fact. See Palmisciano v. Burrillville Racing Ass'n., 603 A.2d 317, 320
(R.I. 1992).
 III The "Asermely Claim"
Count I raises what is sometimes dubbed as an "Asermely Claim," after the Rhode Island Supreme Court decision in Asermely v. Allstate Ins.Co., 728 A.2d 461 (R.I. 1999). Accordingly, discussion of theAsermely case is warranted.
The Court in Asermely did not create a new cause of action but, rather, (1) affirmed the nature and scope of the fiduciary relationship between an insurance carrier and its insured and, in that context, (2) adopted a public policy-driven rule allowing for *Page 12 
third party enforcement of a judgment directly against an insurer in those cases where the insurer's decision not to accept a reasonable offer to settle a claim within the policy limits results in an excess judgment against the insured. See Asermely, 728 A.2d at 464. The general proposition, laid out in Asermely, is that the insurer's duty amounts to a fiduciary obligation which requires the insurer to act in the best interests of the insured, putting its own monetary interests to the side. See id. In applying this general proposition to the facts inAsermely, our Supreme Court laid out the legal effect of an insurer's decision not to settle within the policy limits where the resulting verdict exceeds those limits. See id. It followed that if the insurer's decision not to settle a claim for an amount within the policy limits results in a verdict establishing the insured's liability for damages in excess of the policy protections, the insurer is deemed as a matter of law to have assumed the dangers inherent in any miscalculation in judgment and to have taken on the consequences of its error — including a resulting judgment — irrespective of the limits of the insurance policy. See id. When it held that the insurer must assume the risk of any miscalculation underlying its decision not to accept a reasonable settlement offer, the Asermely Court made no distinction between errors in pretrial strategy; an error in approximating the value of the claimant's damages; an error in appraising the strength of the claimant's evidence; an error in estimating the strength of the insured's defenses; or an error in calculating what law applies or how it will be applied by the courts. See id.
The reasoning behind Asermely seems sensible. Absent policy provisions to the contrary, insurers are able to protect their monetary interest by refusing to settle a claim and, instead, can maximize their leverage by prolonging settlement or by contesting the claim at trial in the hope that they will achieve better results than they could achieve *Page 13 
through settlement. Necessarily, the decision to press the dispute to trial brings with it the risk that the insurer has miscalculated any number of things ranging from the admissibility of certain evidence, to the fact finder's perception of the evidence, to the applicability of certain legal principles, to the degree of brinkmanship that can be played, and so on. Where the insurer's miscalculations lead to a judgment that exceeds the proffered settlement, but the policy proceeds are ample enough to cover that judgment, the insurer more or less quietly swallows the financial gamble it has taken because the amount of the judgment is within or is co-extensive with the policy limits, and thus, no obvious harm is done to the insured.[10] WithAsermely, things changed only to the extent that our Supreme Court recognized that where the policy proceeds are not sufficient to insulate the insured from the insurer's decision to reject a reasonable settlement offer, the insurer's fiduciary obligations require that it gulp down the entire amount of the judgment — not just the amount that is within or is co-extensive with the policy limits. As with any assumption analysis, the insurer's good faith or bad faith is not a factor and, instead, the insurer is deemed to have acted at its own peril, impliedly assenting to the risk posed by its own conduct, and to have taken unto itself the consequences thereof. See id. In fact, our Supreme Court in Asermely assumed the insurer's good faith when it held: "Even if the insurer believes in good faith that it has a legitimate defense against the third party, it must assume the risk of miscalculation if the ultimate judgment exceeds the policy limits."Id.
Although the Asermely case happened to involve only a single claimant,see id. at 462, there is nothing about our Supreme Court's language inAsermely to suggest that the *Page 14 
propositions set forth in it will never apply in multiple claimant cases. Nor did the Asermely Court suggest that multi-claimant cases and an insurer's obligation to seriously consider a reasonable written offer within the policy limits or assume the consequences necessarily are mutually exclusive. That insurers might face such a "thorny problem" as multiple claimants and meager policy limits was nothing new whenAsermely was decided, and as the United States Court of Appeals for the First Circuit pointed out years before Asermely was decided: "The insurer's goal should be to try to effect settlement of all or some of the multiple claims so as to relieve its insured of so much of his potential liability as is reasonably possible considering the paucity of the policy limits." Peckham v. Continental Cas. Ins. Co., 895 F.2d 830,835 (1st Cir. 1990) (citing Liberty Mut. Ins. Co. v. Davis,412 F.2d 475, 481 (5th Cir. 1969)); see also 22 Eric Mills Holmes, Holmes'Appleman on Insurance 2d § 137.2 at 125-28 (2003). As our Supreme Court put it in Asermely: "The insurer's duty is a fiduciary obligation to act in the best interests of the insured." Asermely, 728 A.2d at 464. Seemingly implicit is that the insurer must act in the insured's best interests given the surrounding circumstances. If those circumstances include multiple claimants with one or more having injuries carrying the potential to exhaust the policy limits, then common sense would dictate that the insurer — a fiduciary who typically is far more experienced in these matters than the insured — would take those circumstances into consideration when discharging its duties to its insured.
Thus the insurer faced with a multi-claimant situation should take affirmative steps to relieve its insured of so much of his or her potential liability as is reasonably possible, see Peckham,895 F.2d at 835, and, in that context, must seriously consider the claimants' reasonable offers to settle within the policy limits or assume the consequences *Page 15 
of its failure to do so. See Asermely, 728 A.2d at 464. Certainly, the insurer is not expected to guarantee the outcome and, should it err in deciding which of several non-liquidated claims present the greatest threat or threats, any liability for its decision will turn on its exercise of professional skills and good faith in making that judgment call — including those instances where the insurer determines its insured's interests are best served by expending the policy limits on a single claim. See Peckham, 895 F.2d at 835; see also Holmes'Appleman on Insurance 2d, supra, § 137.2 at 127 ("In the exercise of its duty to its insured, the insurer may attempt to settle as many claims within policy limits as possible, even though it may reduce or eliminate funds available for some claimants"). At the same time, "efforts to achieve a prorated comprehensive settlement may excuse an insurer's reluctance to settle with less than all of the claimants, but need not do so." Liberty Mut. Ins. Co., 412 F.2d at 481 (emphasis added). For example, "[i]n many cases, efforts to achieve an overall agreement, even though entailing a refusal to settle immediately with one or more parties, will accord with the insurer's duty." Id. However, as the court in Liberty Mutual noted:
 where the insurance proceeds are so slight compared with the totality of claims as to preclude any chance of comprehensive settlement, the insurer's insistence upon such a settlement profits the insured nothing. He would do better to have the leverage of his insurance money applied to at least some of the claims, to the end of reducing his ultimate judgment debt.
Thus, "[i]n other cases, use of the whole fund to cancel out a single claim will best serve to minimize the [insured's] liability."Id.
Here, however, the legal analysis and fact questions relevant to an insurer's obligations in multi-claimant cases are beside the point. It is undisputed that Travelers did *Page 16 
not attempt to negotiate any of the claims until days before the DeMarco trial was locked on to begin and, instead, refused to consider all of the three claimants' settlement offers, relying on the claimants to negotiate their claims vis- À -vis each other and reach a global settlement within the policy limits. Furthermore, Travelers refused to make any unconditional individual settlements until after the DeMarco claim had been reduced to a judgment, and the insureds' liability on it and the accumulated interest had attached. It was only then that Travelers settled one of the claims and, therefore, questions concerning its use of professional skill and good faith in selecting which of the multiple claims should be settled in order to "relieve its insured of so much of his or her potential liability as is reasonably possible" are extraneous in the context of the narrow circumstances of this case. As far as its strategy went, Travelers well may have been acting within the technical meaning of its policy provisions when it refused to consider any settlement offers and invited DeMarco to prove his damages at trial, but it also assumed the consequences of its decision to stand firm on those rights. See Asermely, 728 A.2d at 464.
In its objection papers, Travelers attempts to re-frame the issue by casting the question as one of whether DeMarco "would have accepted less than the policy limit and that the remainder would be sufficient to settle the [other] claims thereby eliminating any excess exposure to the insureds." (Defendant Travelers Insurance Company's Sur-Reply to Pls.' Mot. Summ. J., 2, Oct. 12, 2007 (emphasis in original).) However, this view of the issue merely begs the questions presented. True, Travelers may have been able to escape liability for this excess judgment if DeMarco had reneged on his long-standing offer to settle for the policy limits. However, it is undisputed that Travelers never offered *Page 17 
to contribute more than $550,000 to a settlement, and questions about what might have happened had Travelers done things differently during the three years leading up to DeMarco's drop-dead date are highly speculative.
Again, the fact of multiple claimants and not enough money is beside the point in the context of the particular factual circumstances of this case. It is crystal clear that Travelers' Claims Director understood the nature and extent of Travelers' duties in multi-claimant cases when she stated in her letter of September 5, 2006: "[I]f we are unable to resolve all claims within the limits, we will proceed to settle the claims individually and will attempt through individual settlements to maximize the release of the insured from as much potential liability as possible." (Pls.' Ex. 13, letter, Sept. 5, 2006.) It is equally clear that Travelers' strategy was to do did quite the opposite of what was expected of it and, seemingly comfortable with the notion that its own exposure was capped at one million dollars, settled none of the claims in the space of three years — thus walking Doire and Virginia into a verdict of over two million dollars while leaving the other two claims festering.
Meanwhile, for its own part, Travelers kept control over the litigation; held onto its money for three years as interest accrued against Doire and Virginia; enjoyed the benefit of the chance that DeMarco might fail in some aspect of his trial proof; preserved its legal defenses against its own insureds; and, in the end, attempted to cap further its own exposure by ignoring the judgment and applying its policy proceeds to the Woscyna claim — obtaining a release for itself in the process.
Travelers also relies on the language in Asermely in which the Court instructed that "the insurer is liable for the amount that exceeds the policy limits, unless it can show *Page 18 
that the insured was unwilling to accept the offer of settlement."Asermely, 728 A.2d 464. However, it is uncontroverted that the policy language at issue in the instant case conferred no rights upon Doire and Virginia in respect of payment of claims and that Travelers retained its power to control the both the litigation and payment of claims. It is also uncontroverted that Travelers could have paid out the policy limits to any of the claimants over Doire's and Virginia's objections.
Seemingly in connection with its cross-motion for summary judgment, Travelers blends in questions having to do with Counts III-VI of the original Complaint. (Defendant Travelers Insurance Company's "Substituted" Opp'n to Pls.' Mot. Summ. J. Oct. 4, 2007.) In addition to professing its good faith — irrelevant for purposes of the Count IAsermely analysis — Travelers argues that because Doire and Virginia ultimately were able to purchase a release of DeMarco's claims against them, Travelers cannot be liable under any analysis. (Defendant Travelers Insurance Company's "Substituted" Opp'n to Pls.' Mot. Summ. J., 2, 20, Oct. 4, 2007.) Travelers asserts that the post-trial mediation "resulted in a settlement of both the DeMarco and Woscyna claims for the policy limit of $1,000,000." (Defendant Travelers Insurance Company's "Substituted" Opp'n to Pls.' Mot. for Summ. J., 8, Oct. 4, 2007.)
Distilled, Travelers' argument is that essential elements of Doire and Virginia's bad faith and breach of contract claims are missing because (1) DeMarco's claims against it derive only from Doire and Virginia by way of assignment, and (2) Doire and Virginia averted any looming harm when they negotiated the sale of their claims against Travelers in consideration for a release. This argument presupposes that a damages claim becomes moot if the harm done is abated. It also overlooks the glaring fact of the unsatisfied *Page 19 
judgment, the clear and unambiguous language of the DeMarco release, and all else that is left outstanding between DeMarco and Travelers and which is captured in the instant action — including the question of Travelers' satisfying the judgment that it assumed the risk of having to pay. However, Travelers' argument does help crystallize the question of DeMarco's third party right to payment of the judgment when it asserts: "DeMarco possesses no rights against Travelers independent of those assigned to him by Travelers' insureds, Doire and Virginia Transportation." (Defendant Travelers Insurance Company's "Substituted" Opposition to Pls.' Mot. for Summ. J., 9, Oct. 4, 2007.)
It seems obvious that although the genesis of Asermely-based culpability for an excess judgment has its origins in (1) the insured's liability for a tort, (2) the insurance contract, and (3) the insurer's fiduciary obligations to its insured, the insurer's obligation to pay an excess judgment is not a judicially contrived extension of the insurer's contractual obligation to pay some or all of a pre-designated maximum amount of damages that the insured is legally liable to pay. Instead, the insurer's obligation rests upon its independent assumption of the consequences caused by its own miscalculations in failing to respond to a reasonable settlement request — but for which the insured would have been spared the anguish of a trial and the myriad of personal, legal, and financial consequences attendant to the fact of a judgment entering against him or her. Furthermore, it seems equally obvious that it is on account of the latter that the insurer becomes responsible for theentire excess judgment and not merely the difference between the rejected settlement offer and the policy limits. Finally, it is axiomatic that an assumption can be personal only to the decision maker — the individual having the power to entertain the risk — and, further, that one who assumes the obligation of another is *Page 20 
independently liable for it. See Black's Law Dictionary 134 (8th ed. 2004) (defining "assumption" as "the act of taking [esp. someone else's debt or other obligation] for or on oneself"); N. Y. Cent. R. R. Co. v.General Motors Corp., 182 F. Supp. 273, 290 (N.D. Ohio 1960) (citingDespatch Oven Co. v. Rauenhorst, 40 N. W. 2d 73 (Minn. 1949) ("The word `assume' etymologically means to take upon one's self; and when used in law with respect to liability, the word means to become personally liable therefor by paying or otherwise discharging it.")); FederalDeposit Ins. Corp. v. Prann, 694 F. Supp. 1027, 1035 n. 12 (D.P.R. 1988) (defining "assumption of debt" as "vehicle whereby a third party . . . [takes] on a preexisting debt, thus making himself a debtor while liberating the original debtor. . . ."); Ray v. Donohew, 177 W. Va. 441,447, 352 S. E. 2d 729, 735-36 (1986) (W.Va. 1986) ("Where the assumption of a debt is involved, the words `assume' and `assumption' are construed to mean that the person assuming will become personally liable by paying or otherwise discharging the debt."). Therefore, although Doire and Virginia's obligation to pay the judgment may have been co-extensive with Travelers' obligation to pay it, Travelers' independent obligation was unaffected by DeMarco's release of Doire and Virginia.[11]
Travelers contends that applying Asermely to the facts of this case would contravene public policy. However, that contention ignores the somewhat startling, but hopefully unique, facts of this case in which Travelers tries to have it both ways: take advantage of its power to refuse a reasonable settlement offer but escape the consequences through the simple expediency of an after-the-fact pay-out of the policy limits. Furthermore, there is no discernable public policy objective advanced by ignoring *Page 21 
the clear and unambiguous language of the release that specifically excluded Travelers from its terms. If anything, public policyfavors giving full effect to the terms of that release. Similarly, there is no discernable public policy objective behind viewing the release as having nullified the assignment of Doire and Virginia's potential claims against Travelers or having extinguished those potential claims. Finally, there is no discernable public policy objective behind permitting Travelers to escape an assumed obligation by allowing it the benefit of a legal fiction — regardless of whether the legal fiction (1) permits Travelers to step into the shoes of its insured for the purpose of benefiting from a release that specifically excludes it or (2) shifts the risk and burden of the excess judgment entirely onto Doire and Virginia such that releasing them from liability extinguishes the judgment.
The Plaintiffs' Motion for Summary Judgment on Count I is granted. Travelers has failed to come forward with admissible evidence to demonstrate that DeMarco's offer to settle for one million dollars was not reasonable, in other words that his offer did not reasonably correlate to the nature and severity of his injuries. Nor has it come forward with admissible evidence to demonstrate that it did not have adequate time to investigate, consider, and respond to DeMarco's offer. Nor has it come forward with admissible evidence that DeMarco's drop-dead date of August 30, 2006 was unreasonable under the circumstances. Nor has it come forward with admissible evidence that it ever offered to settle with DeMarco for the one million dollars in policy limits. Nor has it come forward with admissible evidence to demonstrate that it could not accept DeMarco's settlement offer because its policy limits had been depleted or exhausted by an earlier settlement. *Page 22 
 IV Pre-Judgment and Post-Judgment Interest
Section 27-7-2.2 of the Rhode Island General Laws requires no interpretation or construction. Its terms are clear and unambiguous. It requires that in any civil action where the defendant is covered by liability insurance and in which the Plaintiff makes a written offer to settle within or at the policy limits, and the offer is rejected by the insurer, then the insurer shall be liable for all interest due on the judgment. The words — "any," "shall," and "all" — are not susceptible to different interpretations. The Rhode Island Supreme Court frequently has stated that "`when the language of a statute is clear and unambiguous, [a court] must enforce the statute as written by giving the words of the statute their plain and ordinary meaning.'" Park v. Rizzo Ford,Inc., 893 A.2d 216, 221 (R.I. 2006) (quoting Gem Plumbing Heating Co.v. Rossi, 867 A.2d 796, 811 (R.I. 2005)). Thus, when a court examines an unambiguous statute, there is "no room for statutory construction and [the court] must apply the statute as written." State v. Santos,870 A.2d 1029, 1032 (R.I. 2005) (quoting State v. DiCicco, 707 A.2d 251, 253
(R.I. 1998) (further citations omitted)).
Plaintiff's Motion, for Summary Judgment on Count II is granted. It is undisputed that Travelers did not accept DeMarco's written offers to settle the action in an amount equal to the Travelers' policy limits of one million dollars, notwithstanding that it had the ability to do so. *Page 23 
 V Travelers' Cross-Motion for Summary Judgment
Travelers' cross-motion for summary judgment is denied with respect to Counts I and II for the reasons set forth above.
Travelers' cross-motion for summary judgment on Counts III and IV also is denied. Although Travelers' failure to settle any of the claims until after the DeMarco jury returned its verdict is undisputed, there exist genuine issues of material fact about the nature and extent of the harm that Doire and Virginia suffered as a result of the excess judgment.
 Conclusion
Travelers Insurance Company is liable for the judgment entered inWayne DeMarco et al. vs. Leo Doire and Virginia TransportationCompany, Prov. Super. Court, C.A. 04-1171, interest included, to the extent that judgment remains unsatisfied. Furthermore, there being no just reason for delay, Super. R. Civ. P. 54(b) final judgment shall enter on Counts I and II.
[1] The DeMarcos bring this claim individually and as parents and legal guardians for Chayce DeMarco and Brayden DeMarco.
[2] Count V, entitled "Third Party Right to Demand Payment of the Verdict/Judgment Above and Beyond Travelers Policy Limit" contains a similar request.
[3] Inasmuch as the parties have, de facto, treated Wayne DeMarco's claim and the other DeMarcos' derivative claims for loss of consortium as a consolidated claim, the Court will do likewise. All references herein to DeMarco's claim are meant to include the claims of DeMarco, Leesa DeMarco, Chayce DeMarco, and Brayden DeMarco.
[4] On November 7, 2006, Virgina's attorney wrote to Travelers demanding that Travelers pay $500,000 in settlement of the Woscyna claim. (Pls.' Ex. 19, letter, Nov. 7, 2006.) Travelers responded with a letter in which it stated: "In any event, under the terms of the insurance policy, [the insureds] do not have the right to direct the proceeds of the policy. . . . Rather, the policy establishes that it is Travelers [sic] `right and duty to defend any "suit" asking for 
damages" and "to investigate and settle any claim or suit as we [Travelers] deem appropriate." (Pls.' Ex. 25, letter, Nov. 9, 2006.) So, too, during hearing on the oral arguments in the instant motion, Travelers agreed that it had complete authority and power to settle the multiple claims in this case but that it determined not to do so.
[5] In a letter of February 25, 2004, in which DeMarco's attorneys offered to settle DeMarco's claim for the policy limits, they specifically referred to the case of Asermely v. Allstate Ins. Co.,728 A.2d 461 (R.I. 1999) and evidenced their intention to enforce any excess judgment against Travelers. (Pls.' Ex. 3, letter, Feb. 25, 2004.) Furthermore, on August 7, 2006, Travelers sent an email communication in which it discussed DeMarco's strategy and anticipated that DeMarco might take an assignment of claims that Doire and Virginia might have against Travelers on account of any verdict that might be awarded by the jury in excess of the policy limits. (Pls.' Ex. 7, email communication, Aug. 7, 2004.)
[6] On February 2, 2004, DeMarco's attorneys made the first of four written demands or offers to settle for Travelers' policy limits of one million dollars. (Pls.' Exs. 2, 3, letters, Feb. 2, 2004; Feb. 25, 2004; Jul.22, 2005; Aug. 23, 2006.)
[7] It is undisputed that Travelers valued DeMarco's claim as having a probable value of approximately $650,000 exclusive of pre-judgment interest and as having a total approximate value of $885,000 as of September 2006, prejudgment interest included. Albeit for different reasons, Travelers valued Woscyna's claim for approximately the same amount. (Travelers'"Substituted" Op. to Pls.' Mot. Summ. J. 12, Oct. 7, 2007; Travelers' Ex. 40.)
[8] On May 21 2006, Doire and Virginia's appointed defense counsel, Michael R. Deluca, sent an email to Travelers' Claims Director, Caren Gattinella, to inform her of his understanding that DeMarco would no longer accept the policy limits in settlement of his claim. In his deposition testimony about that, Deluca testified that one of DeMarco's attorneys, Mark Dana, may have said something along the lines that DeMarco would not accept the one million dollars and was looking for money in excess of the one million in policy limits. Characterizing his understanding of the motivation behind Dana's statements as a "guess," Deluca further testified that he thought Dana made the statement because Doire had not agreed to pay the limits of his insurance policies. (Travelers' Ex. B, Oct. 2, 2007, Michael Deluca's Dep. 153.) Although it is uncontroverted that DeMarco's attorneys, Dana included, made multiple offers to settle DeMarco's claim — warning Travelers of its potential liability on any excess judgment if it refused to accept, and although Deluca's description of the events are consistent with that — Deluca's statements nonetheless must be taken in the light most favorable to Travelers. Thus for purposes of Plaintiffs' Motion for Summary Judgment, it therefore must be assumed that as of May 21, 2006, DeMarco's previous offers to settle for the policy limits were withdrawn, if only temporarily.
[9] DeMarco does not contend that he is entitled to this amount in addition to the amount of final judgment.
[10] A discussion of the precise nature and extent of the harm that can be caused as a result of a judgment entering against an individual, even if ultimately satisfied, is unnecessary given the issues presented by this Motion.
[11] Although Travelers raised questions about the effect of the DeMarco release during oral argument, it failed to develop any such arguments in its written cross motion and objection to the instant Motion for Summary Judgment.